**Jerry PHILLIPS, Plaintiff,**

v.

**RIVERSIDE, INC., Apartment House Builders, Inc., and Insurance Management Administrators of Louisiana, Defendants.**

**No. LR–C–91–537.**

United States District Court,
E.D. Arkansas, E.D.

June 2, 1992.

Patty W. Lueken, Lueken & Owings, Gans Building, Little Rock, Ark., for plaintiff.

James W. Tilley, Huckabay, Munson, Rowlett & Tilley, P.A., Little Rock, Ark., for defendants.

## MEMORANDUM AND ORDER

SUSAN WEBBER WRIGHT, District Judge.

This case involves the alleged failure to give proper notice to an employee of his rights to elect continuation of coverage under a group health care plan after termination of his employment. Plaintiff Jerry

Phillips claims that the failure to give such notice violated certain provisions of the Employee Retirement Income Security Act of 1974 (ERISA) that are popularly known by the acronym "COBRA." *See* Comprehensive Omnibus Budget Reconciliation Act of 1986, Pub.L. 99–272, Title X, § 10002, 100 Stat. 227 (1986) (codified at 29 U.S.C. §§ 1161 to 1168). He seeks relief that includes payment of medical bills in the amount of $38,597.08, a declaration that the COBRA election period begins to run from the date of judgment, statutory penalties of $100 per day a provided under 29 U.S.C. § 1132(c), and attorney's fees and costs.

The case was tried to the Court on April 6, 1992. For the reasons explained below, the Court finds in favor of Mr. Phillips. This Memorandum and Order, which was drafted without the benefit of a transcript of the trial, constitutes the Court's findings of fact and conclusions of law.

## I.

Jerry Phillips was President of Defendant Riverside, Inc. (Riverside) for several years until his termination in October 1989. Riverside is a subsidiary of Defendant Apartment House Builders, Inc. (AHB). Mr. Phillips spent about 80–90% of his time in the field both overseeing and doing plumbing, heating and air conditioning, ornamental iron, and electrical work for Riverside, as well as working with architects and engineers designing such systems for apartment houses built by AHB. The remainder of his time was devoted to his duties as an officer of the company.

Riverside and AHB each employ over twenty full-time employees and both offer health insurance to their employees under the largely self-funded AHB Employees Benefit Plan and Trust (the Plan). James Kincannon, Vice President of AHB, has been the Plan's administrator since 1989.[1] Defendant Insurance Management Administrators of Louisiana (IMA) is a third party administrator with no discretionary authority and, accordingly, was dismissed from the lawsuit prior to trial.

On October 6, 1989, the owners of Riverside and AHB terminated Mr. Phillips and gave him three months severance pay and benefits, including health insurance.[2] His termination was not for misconduct or any other reason that would exclude him from coverage under COBRA provisions. In November and December 1990 Mr. Phillips suffered a heart attack and underwent bypass surgery, incurring substantial medical bills. Mr. Phillips did not have health insurance coverage at this time. After the surgery, he met with the Accounts Payable personnel at Baptist Medical Center to discuss ways to pay his bills. They explained his COBRA rights and suggested that he contact his former employer to see if he could pay his premiums current so that his former health insurance provider would pay for his medical bills. On March 24 or 25, 1991, Mr. Phillips contacted AHB and attempted to elect his COBRA coverage benefits, but was refused by Mr. Kincannon.

## II.

COBRA provides that employers must allow former employees the opportunity to continue health care coverage under the employer's plan if a qualifying event occurs. 29 U.S.C. § 1161. Such coverage usually is provided by the employer at the employee's own expense, not to exceed

---

1. This was stipulated by the parties. However, the summary plan description (Defendants' Exhibit 1) indicates on page three that the Plan administrator is the "Trustees of the Apartment House Builders Employees' Benefit Plan & Trust." The plan administrator's address is "Apartment House Builders, P.O. Box 959, North Little Rock, AR 72215," and the agent for service of legal process is Mr. Jim Kincannon at that same address. Since the question of the proper party in interest has not been raised in this lawsuit, and since Mr. Kincannon obviously

is acting as an agent of AHB in administering AHB's self-funded health plan, the Court will treat Mr. Kincannon and AHB as one in the same for the purposes of liability. *Cf. Paris v. F. Korbel & Bros., Inc.,* 751 F.Supp. 834, 838 (N.D.Cal.1990).

2. Although the complaint alleged Mr. Phillips was terminated on October 13, 1989, undisputed evidence at trial showed that the termination occurred on October 6, 1989.

102% of the employer's cost. 29 U.S.C. § 1162(3). The plan administrator must give appropriate notice of COBRA rights on two separate occasions. Under 29 U.S.C. § 1166(a)(1), covered employees and their spouses must be notified of their rights under COBRA at the time of commencement of coverage under the plan. The second round of notice-giving is triggered by a qualifying event. 29 U.S.C. § 1166(a)(4). Termination of employment is a qualifying event. 29 U.S.C. § 1163(2). In the event of termination of a covered employee, an employer must notify the administrator of the group health plan within thirty days of the termination. 29 U.S.C. § 1166(a)(1). The plan administrator, in turn, must notify the discharged employee and other qualified beneficiaries within fourteen days of their COBRA rights and allow them at least sixty days to decide whether or not to elect continuation of their group health plan coverage. 29 U.S.C. §§ 1165(1), 1166(a)(4) and (c), 1167(3)(B). Discharged employees generally may elect such coverage for up to eighteen months following their termination. 29 U.S.C. § 1162(2)(A)(i).

The question is whether Jerry Phillips received proper notice of his rights under COBRA. The defendants say they provided notice; Mr. Phillips claims they did not. The Court's analysis will proceed in two steps. The Court first must determine whether the defendants actually gave notice to Mr. Phillips. If so, the Court then must determine whether that notice adequately informed him of his COBRA rights.

### III.

■ It is undisputed that Jerry Phillips's termination was a qualifying event under section 1163. The Plan's administrator, James Kincannon of AHB, thus was obliged to give Mr. Phillips notice of his COBRA rights. As a threshold matter, it is the plan administrator, not the employer, who is required to give such notice. 29 U.S.C. §§ 1165(1), 1167(3)(B). The Court therefore finds that Riverside is not liable. The following discussion, then, concerns AHB's liability for failure to provide proper notice.

Mr. Phillips said that he never received notice of any kind regarding his right to continuing health coverage under COBRA, and that he would have continued such coverage had he known about it. His wife and son testified that when they picked up mail at the family home there was never a COBRA letter for Mr. Phillips; they also knew of no COBRA notice being received by Mr. Phillips.

James Kincannon and Sheila Vaughan testified at trial about the office procedures used in notifying departing employees of their rights under COBRA. Mr. Kincannon indicated that the Departing Employee's Notice and Election Form (Defendants' Exhibit 2) is what employees receive as a "COBRA letter" after termination of their employment. It functions as an informational letter and election form. No cover letter or other supporting information is included. Mr. Kincannon said that from 1987–91 COBRA letters usually were sent by first class mail and occasionally were hand delivered (such as being attached to the last payroll check), but he was not aware of the specifics. After 1991 the forms were sent by certified mail. He admitted that in 1989 AHB kept no copies, lists, files, or other records verifying that COBRA letters had been mailed or delivered.

Ms. Vaughan testified that she handled paperwork related to the insurance program, including the sending of COBRA letters. Normal procedure in 1989 was to mail COBRA letters first class to employees. She said she made no notations and kept no files, records, copies, or any other information showing that COBRA letters were sent out. However, she specifically recalled sending a COBRA letter to Mr. Phillips, a friend of hers, at his address on Nandina Street in North Little Rock, Arkansas, within two weeks after he left Riverside, but she could not remember if it was mailed first class or certified. She did say that the letter to Mr. Phillips was mailed at the same time she sent COBRA letters to Johnny Belasco and David Sedberry, and that all three letters went the

same way. Ms. Vaughan also testified that no COBRA letters were returned in 1989.

Somewhat conflicting testimony was given by David Sedberry and Johnny Belasco. Mr. Sedberry left his job with Riverside about two weeks after Mr. Phillips in order to work with Mr. Phillips (he is now back at Riverside). He said that he received his COBRA letter by certified mail (not first class as was the normal procedure in 1989), signed it, and sent it back to AHB. Ms. Vaughan, on the other hand, denied receiving the COBRA letter returned from Mr. Sedberry. Johnny Belasco said that he left Riverside one to two weeks after Mr. Phillips. He remembered receiving his COBRA letter sometime in November 1989, and was almost sure it came by certified mail. This stuck in his mind because at first he was afraid to sign for the certified letter, thinking it was about child support.

■ The law presumes that a letter properly addressed, stamped, and mailed was received by the person to whom it was addressed. *Hagner v. United States*, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861 (1932); *Hoffenberg v. Commissioner of Internal Revenue*, 905 F.2d 665, 666 (2d Cir.1990); *Beck v. Somerset Technologies, Inc.*, 882 F.2d 993, 996 (5th Cir.1989); *Truesdale v. Pacific Holding Co./Hay Adams Div.*, 778 F.Supp. 77, 81 (D.D.C.1991). Some courts have held that mere denial of receipt is not sufficient to rebut the presumption. *See, e.g., Meckel v. Continental Resources Co.*, 758 F.2d 811, 817 (2d Cir.1985) (applying New York law).

■ Here, application of the presumption is a close question. The defendants could not produce a copy of a properly addressed COBRA letter to Mr. Phillips and they did not make any notations or keep a list showing when Mr. Phillips or any other employees were sent a COBRA letter. There was no certified mail receipt and signed post card (if indeed the letter was sent by certified mail). No one testified that he or she actually deposited Mr. Phillips's COBRA letter in the mail, nor was there evidence of customary mailing practices used in AHB's business. On the

other hand, Ms. Vaughan specifically recalled "mailing" the letter to Mr. Phillips in the course of her regular duties, along with two other COBRA letters which the recipients testified that they had received. Despite the conflicting testimony over whether the two other letters were mailed first class or certified, it is apparent that those letters were mailed and received. Mr. Phillips offered nothing to dispute this evidence other than denying that he ever received a COBRA letter.

The Court finds that the testimony of Mr. Kincannon and Ms. Vaughan does not establish the presumption of receipt after mailing. Neither testified that he or she had personal knowledge that proper postage was affixed to the COBRA letter and it actually was deposited in the mail to Mr. Phillips. Ms. Vaughan said that she remembered "mailing" the letter, but did not indicate whether she or someone else actually placed it in the mailbox or delivered it to the post office. She offered no description of normal office procedures for placing such letters in the hands of the Postal Service. In fact, evidence of office procedures primarily concerned whether COBRA letters were sent certified, return receipt, first-class, enclosed with the final paycheck, or otherwise hand delivered. Mr. Phillips's letter indeed may have been mailed (in the sense of actually being deposited with the Postal Service), but there simply is no evidence of it in the record.

The same conclusion was reached in another COBRA case, *Desimone v. Siena College*, No. 90–CV–1058, 1991 WL 64857, at *2–3 (N.D.N.Y. Apr. 25, 1991). The defendant's personnel director indicated in an affidavit that she signed the COBRA notice and that it was placed in an envelope properly addressed to the plaintiff, affixed with proper postage, picked up by the defendant's postal clerk, and delivered to the post office. The plaintiff denied he received the notice. Applying New York law, the court indicated that the presumption of receipt after mailing can be created "either by offering testimony of the person who actually mailed the letter or through indirect evidence, that is, by offering proof

that mail is sent pursuant to office procedures followed in the regular course of business." *Id.* at *2 (citation omitted). The court cited *Meckel* with approval and explained that "[t]o rebut the presumption there must be 'some proof that the regular office practice was not followed or was carelessly executed so that the presumption that notice was mailed becomes unreasonable.'" *Id.* (quoting *Bossuk v. Steinberg*, 58 N.Y.2d 916, 919, 460 N.Y.S.2d 509, 510, 447 N.E.2d 56, 58 (1983)). Nevertheless, the court found that the defendant was not entitled to the presumption because it was not clear that the personnel director had personal knowledge of the mailing. She failed to say "that she personally mailed the envelope containing the COBRA notice, directed another to do so, or observed another mail the envelope. Nor does [she] describe in her affidavit what was [the defendant's] normal office procedure for mailing letters." *Id.* at *3.

■■■ Even if the presumption is indulged, the Court would reject *Meckel* and instead follow the better rule that "testimony of non-receipt, standing alone, would be sufficient to support a finding of non-receipt; such testimony is therefore sufficient to rebut the presumption of receipt." *In re Yoder Co.*, 758 F.2d 1114, 1118 (6th Cir.1985).[3] Because the Court finds the testimony of Mr. Phillips, his wife, and son more credible as to the nonreceipt of the COBRA letter, the Court would conclude that AHB had failed to notify Mr. Phillips of his COBRA rights.

■■ AHB argues that the evidence shows it made a good faith effort to give notice, and that is all that is required under the statute. The Court disagrees, not with the general proposition, but with its application here. It cannot be said that such an effort was made if there is no evidence that the COBRA letter actually was mailed; moreover, Ms. Vaughan's testimony about office procedures and the consistency with which they were followed was too indefi-

nite to demonstrate good faith compliance with COBRA notice requirements. Courts applying this proposition have been faced with facts unlike those in the present case. For instance, in *Jachim v. KUTV Inc.*, 783 F.Supp. 1328, 1333–34 (D.Utah 1992), testimony showed that the defendant did cause the notice to be mailed. In *Truesdale* the court applied the presumption of receipt after mailing when the defendant sent COBRA notices to an address provided by the plaintiff. The plaintiff claimed that she had not received the notices and that her address was incorrect. Noting that the plaintiff was seeking to benefit from her own error, the court found that the defendant had no knowledge that the address in the plaintiff's personnel file was incomplete. It concluded:

> In effect, the plaintiff's argument would require employers to warrant receipt of COBRA notices. If employers were not allowed to rely in good faith on the information provided by their employees, they would be forced to confirm receipt of what they believed to be properly mailed notices. COBRA imposes no such obligation. An employer or plan administrator who sends proper notice by first class mail to the covered employee's last known address is deemed to be in good faith compliance.

*Id.* at 81. The court further noted that "the presumption is merely evidence that [the] defendant ... fulfilled, in good faith, its notice obligations under section 1166(a)(4)." *Id.* at 81 n. 7. Finally, in *Dehner v. Kansas City Southern Industries, Inc.*, 713 F.Supp. 1397 (D.Kan.1989), the question was whether giving notice by hand delivery, rather than by first class mail, was adequate under COBRA. The court determined that hand delivering the notices was reasonably calculated to reach those to whom they were directed and, consequently, this method "was at the very least a good faith attempt to comply with a reasonable interpretation of COBRA's requirement." *Id.* at 1400.

---

**3.** Although not controlling, Arkansas law provides that the presumption of receipt upon mailing ceases to exist and becomes a question of fact when the addressee denies receipt. *Swink & Co., Inc. v. Carroll McEntee & McGinley, Inc.*, 266 Ark. 279, 584 S.W.2d 393 (1979); *Martin v. Young*, 17 Ark.App. 128, 705 S.W.2d 445 (1986).

The defendants also attempted to show that Mr. Phillips understood the COBRA requirements before he was terminated. They introduced into evidence the booklet entitled "Apartment House Builders Employees' Benefit Plan & Trust Summary Plan Description & Plan Document" (SPD booklet) (Defendants' Exhibit 1), which contains a description of COBRA rights and which AHB claims was given to Mr. Phillips as well as other employees. The defendants also presented two witnesses, Bill Combs and Mike Forte, who testified that they spoke with Mr. Phillips on previous occasions about continuation of their health insurance coverage in the event they left Riverside or Riverside shut down. Mr. Phillips denied explaining health insurance coverage to these men. He testified that if an employee asked about such coverage, he would refer the employee to the administrator responsible for insurance.

■ This evidence is unavailing for several reasons. The fact that Mr. Phillips was given notice of his COBRA rights at the commencement of his insurance plan through the SPD booklet, which is required under section 1166(a)(1), in no way relieves the plan administrator of the second round of notice obligations under section 1166(a)(4)(A) after a qualifying event. The law requires two notices, not one.

■ Mr. Phillips's personal knowledge of his COBRA rights likewise does not nullify the administrator's statutory duty to give notice upon termination. Indeed, the law presumes that employees will know something about COBRA if they were provided with appropriate notice at the commencement of their health plan. Yet Congress still thought it necessary to mandate a second notice upon discharge. This is particularly helpful in cases such as this where the employer provides the departing employee with severance pay and extended benefits apart from any COBRA obligations. Without the timely COBRA reminder, the extension of benefits somehow might obscure the departing employee's right to additional continuation of coverage under COBRA.

The testimony of Mr. Combs and Mr. Forte is inconclusive. Mr. Combs said that he asked Mr. Phillips about continuation of coverage during a job interview and Mr. Phillips told him that he could continue health coverage in the event he left Riverside, but that he (Phillips) wasn't sure about dental and life insurance coverage. After checking, Mr. Phillips got back with him the same day and said that dental and life would not continue, and that health coverage would be the same but the premiums would increase. This occurred in 1985; COBRA was signed into law on April 7, 1986 and applies to plan years beginning on or after July 1, 1986. Mr. Forte testified that he talked with Mr. Phillips in 1988 about getting health insurance from Riverside because he then was on his wife's policy and they were getting a divorce. He said that Mr. Phillips told him that Riverside was in trouble and might forced to close down, but that he could continue his health coverage himself if that happened. However, Mr. Forte did not say whether Mr. Phillips thought coverage could continue because of COBRA or because of some other reason. It is not apparent from this testimony that Mr. Phillips understood that his own health insurance could be continued *under COBRA*.

The description of COBRA rights in the SPD booklet given to Mr. Phillips several years prior to termination is confusing at best. On page 29, the explanation of "COBRA" reads in part:

If you are an employee of Employee Medical Trust, you have a right to choose this continuation coverage if you lose your group health coverage because of a reduction in your hours of employment or the termination of employment (for reasons other than gross misconduct on your part).

If you are an employee covered by The Employee Medical Trust, you have the right to choose continuation coverage for yourself if you lose group health coverage under The Employee Benefit Plan & Trust for any of the following four reasons:

(1) The death of your spouse

(2) A termination of your spouse's employment (for reasons other than gross misconduct) or reduction in your spouse's hours of employment;

(3) Divorce or legal separation from your spouse; or

(4) Your spouse becomes eligible for Medicare.

Nowhere is the "Employee Medical Trust" identified in the SPD booklet. Is it different from the Employees' Benefit Plan and Trust? The first paragraph says that continuation coverage is provided in the event of termination or reduction in hours only to those who are employees "of" the Trust. Compare this with the second paragraph, which mentions employees "covered by" the Trust. No explanation is given as to the difference between an employee of the Trust and an employee covered by the Trust. The two paragraphs, taken together, suggest that the former have different rights under COBRA than the latter. Furthermore, the two paragraphs incorrectly state the law. The coverage described in the first paragraph applies to *all* employees covered by the AHB Employees' Benefit Plan and Trust. *See* 29 U.S.C. §§ 1163(2) and 1167(3)(B). The coverage described in the second paragraph does not apply to *employees* (*e.g.*, an employee will not lose his continuation coverage due to the death of his spouse), but rather to covered employees' *spouses* as qualified beneficiaries under the Plan. *See* 29 U.S.C. §§ 1163 and 1167(3)(A).[4]

The Court is somewhat puzzled by AHB's reliance on Mr. Phillips' alleged knowledge of COBRA as a defense to its liability. AHB cites no authority, nor is the Court aware of any, which would permit it to escape liability for failure to give notice upon the occurrence of a qualifying event because the beneficiary already was aware of his or her COBRA rights. This might work if AHB could show that Mr. Phillips knew the availability of and procedures for electing continuation of health

coverage under COBRA *and* would not have elected coverage even if he had received notice (*i.e.*, he was not prejudiced by the failure to notify), but that is not the case here. Such knowledge also might be a relevant factor in the Court's discretionary award of damages under 29 U.S.C. § 1132(c)(1), but the Court need not reach that question since AHB has failed to prove that Mr. Phillips possessed a prior understanding of his COBRA rights. *Cf. Kaszuk v. Bakery and Confectionary Union*, 638 F.Supp. 365, 373–74 (N.D.Ill.1984).

### IV.

Even if Mr. Phillips actually received the "COBRA letter" sent by AHB, he would still prevail. Notice to a discharged employee must disclose "such beneficiary's rights under this subsection [COBRA]." 29 U.S.C. § 1166(a)(4). This includes adequate information about "the coverage [he] is entitled to receive and the money that [he] owe[s] in order to maintain coverage." *Lincoln General Hospital v. Blue Cross/Blue Shield of Nebraska*, 963 F.2d 1136, 1139-40 (8th Cir.1992). The notice must be sufficient to enable the discharged employee to make an informed and intelligent decision whether to elect continuation coverage. *See id.* at 1140; *Meadows v. Cagle's, Inc.*, 954 F.2d 686, 692 (11th Cir. 1992).

After careful examination of the "COBRA letter" used by AHB (Defendants' Exhibit 2), the Court finds that it would not adequately have informed Mr. Phillips of his rights. The form contains no real notice provisions; it merely requests certain responses from the recipient indicating whether coverage should continue and what type of coverage is desired. Knowledge of one's COBRA rights can be surmised only from reading between the lines of these responses. Even this does not reveal how long the continuation coverage will last, or when the sixty-day election period[5] or the "45 days to pay" begins.

---

4. The Court also notes that the three lists of qualifying events contained in the "COBRA" section of the SPD booklet are incomplete. *See* 29 U.S.C. § 1163.

5. The election period must extend at least sixty days beyond the *later* of (1) the date on which insurance under the plan terminates by reason of a qualifying event or (2) the date of his

The so-called notice also fails to explain the employee's rights to continue his coverage or convert his coverage to an individual plan, the right to convert to individual coverage from family coverage, and what circumstances might cut short the continuation coverage. This letter, assuming it was received, did not contain adequate information about the coverage Mr. Phillips was entitled to receive, and therefore he could not have made an informed and intelligent decision whether to elect continuation of coverage.

### V.

For failure to provide proper COBRA notice, a court in its discretion may hold the plan administrator liable to the participant in the amount of up to $100 a day from the date of such failure and may order such other relief "as it deems proper." 29 U.S.C. § 1132(c)(1). At the very least, the aim is to place the plaintiff "in the same position [he] would have been in had full continuation coverage been provided." *Gaskell v. Harvard Co-op Society*, 762 F.Supp. 1539, 1543 (D.Mass.1991).

■■■ The Court finds that AHB was legally obligated to provide continuation coverage to Mr. Phillips at his expense for eighteen months from the date of his termination, that is, from October 6, 1989 to April 6, 1991. The fact that the defendants "gratuitously" provided Mr. Phillips's with benefits for an additional three months does not alter or affect the running of the eighteen-month period under the statute. Section 1162(2)(A) defines the period of coverage for terminations as "beginning on the date of the qualifying event and ending not earlier than ... the date which is 18 months after the date of the qualifying event." Termination *is a "qualifying event" if "but for the continuation coverage required under [COBRA] [termination] would result in the loss of coverage of a qualified beneficiary." 29 U.S.C. § 1163(2). Mr. Phillips' termination on October 6, 1989 is a qualifying event because it eventually resulted in the loss of his health coverage, albeit three months later.

■■■ Due to AHB's failure to give Mr. Phillips proper notice of his COBRA rights after his discharge, he did not elect continuation coverage. Therefore, the Court finds that AHB is liable to Mr. Phillips for his medical bills of $38,597.08 incurred during the eighteen month period, less applicable deductibles and premium fees, as well as for any future charges from covered illnesses or injuries occurring during this period. In effect, AHB must provide the same health insurance benefits to Mr. Phillips for the period from October 6, 1989 to April 6, 1991 that he would have had if he had elected continued coverage under COBRA.

■■■ The penalty provisions of Section 1132(c) were intended to induce compliance by plan administrators. *Paris v. F. Korbel & Bros., Inc.*, 751 F.Supp. 834, 839–40 (N.D.Cal.1990); *Porcellini v. Strassheim Printing Co.*, 578 F.Supp. 605, 612–14 (E.D.Pa.1983). The administrator's duties under COBRA are not onerous, while the result of noncompliance could be disastrous for the discharged employee. *Paris*, 751 F.Supp. at 840. Here, the documents and procedures used by AHB in providing COBRA notices have been found wanting. While this does not appear to be the result of bad faith and evidence showed that some changes in those procedures already have been made, the Court believes that a penalty should be imposed to impress upon AHB the importance of compliance with COBRA notice requirements. Consequently, the Court finds AHB should pay to Mr. Phillips a statutory penalty of $5 per day from November 19, 1989 to the date this lawsuit was filed, August 23, 1991.[6] By the

---

COBRA notice. 29 U.S.C. § 1165(1). In Mr. Phillips' case, even if AHB had sent his COBRA letter within two weeks of his discharge, he would have been entitled to at least sixty days beyond the date when his additional three months of benefits terminated to decide whether to elect continued coverage under COBRA.

The COBRA letter used by AHB would not have made this clear.

6. November 19 is forty-four days from the date Mr. Phillips was fired. This includes thirty days for the employer to notify the plan administrator of a qualifying event (termination), 29 U.S.C.

Court's computation, this period of 642 days results in a total statutory penalty of $3210.00.

Section 1132(g) provides that the award of reasonable attorney's fees and costs is within the discretion of the Court. In ERISA cases, the Eighth Circuit has applied a "prevailing plaintiff" standard established in *Gunderson v. W.R. Grace & Co. Long Term Disability Income Plan*, 874 F.2d 496 (8th Cir.1989) and *Landro v. Glendenning Motorways, Inc.*, 625 F.2d 1344 (8th Cir.1980). *See also Consolidated Beef Industries v. New York Life Insurance Co.*, 949 F.2d 960, 966 (8th Cir.1991). Under that standard, "[a] prevailing plan beneficiary or participant 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Gunderson*, 874 F.2d at 500 (quoting *Landro*, 625 F.2d at 1356). The burden of proving that special circumstances exist is on the losing defendant. *Id.* In the present case, AHB has not met its burden of demonstrating special circumstances. Accordingly, the Court awards attorney fees. Counsel for the plaintiff should submit a schedule of fees and costs for the Court's review.

The Court directs plaintiff's counsel to prepare the judgment to be entered in this case reflecting the above relief. The judgment precedent should be agreed to by the defendant and then submitted to the Court for approval and signature within ten days of receipt of this order.

IT IS SO ORDERED.

§ 1166(a)(2), and fourteen days for the administrator to provide information to the terminated employee, 29 U.S.C. § 1166(a)(4) and (c).