**James W. WARD, Plaintiff,**

v.

**BETHENERGY MINES, INC. and Pen–Wel, Inc., Defendant.**

Civ. A. No. 2:93–0904.

United States District Court,
S.D. West Virginia,
Charleston Division.

May 11, 1994.

William D. Turner and Sandra K. Henson, Crandall, Pyles & Haviland, Charleston, WV, for plaintiff.

Michael D. Foster, Jackson & Kelly, Charleston, WV, for Bethenergy.

James A. McKowen, Hunt, Lees, Farrell & Kessler, Charleston, WV, for Pen–Wel.

### MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are Plaintiff's motion to join a necessary party and the cross-motions of the Plaintiff and defendant Bethenergy Mines, Inc. ("Bethenergy") for summary judgment.

For reasons following, the Court **DENIES** the Plaintiff's motion for joinder, **GRANTS** the Plaintiff's motion for summary judgment, in part, and **DENIES** Bethenergy's motion for summary judgment.

### I.

The facts are not in dispute. Plaintiff was an employee of Bethenergy until his termination from employment on December 18, 1990. Bethenergy provides a health plan for its employees pursuant to the provisions of the Consolidated Omnibus Budget Reconciliation Act, popularly known as COBRA. The applicable portions of COBRA have been summarized as follows:

"COBRA provides that employers must allow former employees the opportunity to continue health care coverage under the employer's plan if a qualifying event occurs. 29 U.S.C. § 1161. Such coverage usually is provided by the employer at the employee's own expense, not to exceed 102% of the employer's cost. 29 U.S.C. § 1162(3). The plan administrator must give appropriate notice of COBRA rights on two separate occasions. Under 29 U.S.C. § 1166(a)(1), covered employees must be notified of their rights under COBRA at the time of the commencement of coverage under the plan. The second round of notice-giving is triggered by a qualifying event. 29 U.S.C. § 1166(a)(4). Termination of employment is a qualifying event. 29 U.S.C. § 1163(2). In the event of termination of a covered employee, an employer must notify the administrator of the group health plan within thirty days of the termination. 29 U.S.C. § 1166(a)(1). The plan administrator, in turn, must notify the discharged employee and other qualified beneficiaries within fourteen days of their COBRA rights and allow them at least sixty days to decide whether to elect continuation of their group health plan coverage. 29 U.S.C. §§ 1165(1), 1166(a)(4) and (c), 1167(3)(B). Discharged employees generally may elect such coverage for up to eighteen months following their termination. 29 U.S.C. § 1162(2)(A)(i)." *Phillips v. Riverside, Inc.,* 796 F.Supp. 403, 405–06 (E.D.Ark.1992).

*See generally* Michael J. Canan, *Qualified Retirement and Other Employee Benefit Plans* § 2.8, at 58–65 (1994).

Bethenergy admits it did not notify the administrator of its group health plan within thirty days of the plaintiff's termination as required by 29 U.S.C. § 1166(a)(1). In fact, Bethenergy did not notify the plan administrator, defendant Pen–Wel, Inc. acting on behalf of the Secretary of the Insurance Board of Bethlehem Steel Corporation, of Plaintiff's termination until April 5, 1991, over *fifteen months* after the Plaintiff's termination. The plan administrator promptly informed Plaintiff of his right to continued COBRA health plan coverage within fourteen days of Bethenergy's belated notification of Plaintiff's termination, as required by 29 U.S.C. § 1166(a)(1).

After being notified of his right to continue COBRA coverage, Plaintiff timely exercised that right in June of 1991. It is clear Plaintiff had the option to extend his health plan coverage only for the eighteen months following his termination. 29 U.S.C. § 1162(2)(A)(i). Thus, Plaintiff's coverage was due to expire at the end of June, 1991. Although no demand was made for the first twelve months of premiums[1], the plan administrator immediately billed Plaintiff for $3340.86, the entire amount of the last six months of premiums he would owe. Plaintiff could not pay the entire amount at once, and the plan administrator did not provide the requested coverage.

During the period Plaintiff desired continuation coverage, he incurred medical expenses. Although the total monetary amount of medical bills incurred by Plaintiff during the desired continuation coverage period is unclear from the record, Plaintiff has submitted exhibits showing medical expenses incurred. Plaintiff's motion for summary judgment, Exhibits 1–7. Had continuation coverage been in effect, Plaintiff's medical expenses would have been covered and paid for by the health plan.

## II.

### A.

Plaintiff seeks to join Bethlehem Steel Corporation ("Bethlehem") to this case. Plaintiff contends Bethlehem was the plan administrator, and that the plan administrator is liable to him for damages for not providing him with timely notice of his COBRA continuation rights. However, under COBRA, the plan administrator's obligation to notify a plan participant of continuation rights does not arise until the administrator is informed of the qualifying event, in this case termination, by the employer. 29 U.S.C. § 1166(a)(1). After the employer notifies the administrator of the qualifying event, the administrator has fourteen days to notify the participant of his continuation rights. 29 U.S.C. § 1165(1).

Bethenergy belatedly notified the plan administrator of Plaintiff's qualifying event. However, the administrator notified Plaintiff of his continuation rights within the fourteen days prescribed by 29 U.S.C. § 1166(a)(3). This precise issue was addressed by the Court of Appeals for the Fifth Circuit in *Kidder v. H & B Marine, Inc.*, 932 F.2d 347, 356–57 (5th Cir.1991), where the court stated:

> "While a plan administrator ... generally does have ... a duty [to notify a plan participant of continuation rights], *see* § 1166(a)(4), that duty does not come into play unless the administrator is properly notified of the occurrence of a qualifying event by the employer. *See* 29 U.S.C.A. § 1166(a)(3)."

The *Kidder* court held that because the employer failed to notify the plan administrator of the qualifying event, the duty of the administrator to notify the plan participant of his continuation rights "never arose." 932 F.2d at 357. *See also Bruno v. United Steelworkers of America*, 784 F.Supp 1286, 1319 (N.D.Ohio 1992), *aff'd*, 983 F.2d 1065 (6th Cir.1993) (where employer complies with Section 1166(a)(2) it cannot be held liable for plan administrator's failure to notify plan participant of his continuation rights or fail-

---

1. Apparently, the first twelve months of continuation coverage were covered by a collective bargaining agreement between the Plaintiff's union and Bethenergy. It is unclear how such coverage was activated upon Plaintiff's termination.

ure to continue coverage). Likewise, in the instant case, the duty of the plan administrator did not arise until the Bethenergy gave notice of the Plaintiff's termination. The plan administrator then timely gave notice to the Plaintiff of his continuation rights within the fourteen day period. Because the plan administrator [2] cannot be liable for Bethenergy's failure to notify it of Plaintiff's termination, there is no reason to join it in this action.[3] Thus, Plaintiff's motion for joinder is **DENIED.**

### B.

For essentially the same reasons outlined in Part II., A., *supra,* the Plaintiff's motion for summary judgment against Pen–Wel, Inc. must fail. Simply put, Pen–Wel did not fail in its responsibility to notify the Plaintiff of

his continuation coverage rights within fourteen days of receiving notice of his termination from Bethenergy. Because Pen–Wel's duty to notify Plaintiff of his rights did not arise until after notification from Bethenergy, Pen–Wel did not violate the notice provisions of COBRA. Plaintiff's motion for summary judgment against Pen–Wel is therefore **DENIED.**[4]

### III.

### A.

Both parties seek summary judgment. The issue boils down to whether Bethenergy may be held liable for its late notice of Plaintiff's termination to the plan administrator. Plaintiff argues the late notice prevent-

2. Plaintiff acknowledges that the Secretary of the Insurance Board of Bethlehem Steel Corporation ("Secretary") has been designated by the "Summary Plan Description" as the "plan administrator." The plan administrator, under whatever name, fulfilled its notice obligation pursuant to COBRA. Thus, Plaintiff's motion to join either Bethlehem or the Secretary must be **DENIED.**

3. The Court notes that Title 29 U.S.C. § 1162(3)(B) states:

   "**(3) Premium requirements**
   The plan may require payment of a premium for any period of continuation coverage, *except that such premium—*

   \* \* \* \* \* \*

   **(B)** may, at the election of the payor, be made in monthly installments."
   It does not appear from the record that Plaintiff was given an opportunity to make monthly payments for continuation coverage by the plan administrator. In its letter to the Plaintiff following Plaintiff's election to continue coverage, the plan administrator, through defendant Pen–Wel, Inc., demanded payment for *six months* worth of premiums. Plaintiff was not given the option to make monthly payments as required by Section 1162(3)(B). Exhibit 13, Plaintiff's motion for summary judgment (the letter states, "We have received your form electing to continue Bethlehem Steel Corp. health care coverage under ... (COBRA). Your monthly premium for this coverage is $556.81. Make your check payable to 'COBRA administration' in the amount of $3340.86 for the period 1/01/91 thru 6/30/91. *You must send the total amount of payment due to Pen–Wel, Inc., COBRA administration, ... for your coverage to be reinstated."* (emphasis added)). Far from giving the Plaintiff the option of making monthly installment payments, the letter

from the plan administrator requires full payment of six months worth of premiums.

Although no published caselaw can be found addressing this issue, it appears from the face of the statute that failure of a plan to permit a participant to make payments in monthly installments would be a violation of COBRA. *See Manning v. W.I. McKendree Co., Inc.,* 1991 WL 185037, \*5 (E.D.Va.1991). *See also Income Tax; Continuation Coverage Requirements of Group Health Plans,* 52 Fed.Reg. 22716, 22731 (1987) (proposed regulations to be codified at 26 C.F.R. Part 1) (*"Question 46:* Must a qualified beneficiary be allowed to pay for COBRA continuation coverage in installments? *Answer 46:* Yes. A group health plan must allow a qualified beneficiary to pay for COBRA continuation coverage in monthly installments. A group health plan can also allow qualified beneficiaries the alternative of paying for COBRA continuation coverage at other intervals (e.g., quarterly or semiannually).").

Curiously, however, Plaintiff does not discuss this apparently relevant COBRA violation by the plan administrator and instead asserts the plan administrator violated COBRA through late notice. As discussed *supra,* the plan administrator's notice of continuation coverage availability to the Plaintiff was not in violation of COBRA. *Kidder v. H & B Marine, Inc., supra.* Because the issue of monthly payments has not been adequately addressed by the parties, the Court declines to address its merits.

4. Plaintiff requests penalties be assessed against the plan administrator pursuant to Title 29 U.S.C. § 1132(c)(1). It is clear that such penalties shall be assessed only if the plan administrator is in violation of Section 1166(a)(1) or 1166(a)(4). The plan administrator has not vio-

ed him from electing coverage earlier and thus prevented him from being in a position to pay for COBRA continuation. Bethenergy argues Plaintiff was not prejudiced by the late notice and it should not be held responsible for Plaintiff's failure or inability to pay the premiums owed. Because the Court concludes Bethenergy is in violation of COBRA, Plaintiff is entitled to summary judgment.

■ Title 29 U.S.C. § 1166(a)(2) states: "(2) the employer of an employee under a plan must notify the administrator of a qualifying event described in [Section 1163] ... within thirty days ... of the date of the qualifying event[.]" Bethenergy acknowledges it failed to notify the plan administrator of Plaintiff's qualifying event seasonably. It admits Plaintiff "should have been notified of his COBRA conversion rights as early as February 1, 1990." [5] Plaintiff was not notified of his continuation coverage rights until April of 1991. He then timely elected to receive such coverage. Due to the tardiness of Bethenergy's notification of the qualifying event to the plan administrator, however, the plan administrator demanded payment of six months worth of premiums in a lump sum.

The Court agrees with Plaintiff's argument. For the notice provisions of COBRA to have meaning, failure to abide by those provisions to the detriment of another must impose liability upon the violator for his detrimental conduct. Here the Plaintiff was harmed by Bethenergy's late notice to the plan administrator of the Plaintiff's termination. He was not given the option to make monthly installment payments on his premiums as required by Title 29 U.S.C. § 1162(3)(B).[6] See Note 3, supra. Bethenergy's failure to abide by the notice requirement of Section 1166(a)(2) operated to the detriment of Plaintiff: he was unable to pay the entirety of six months of health plan premiums, thus precluding access to continuation coverage made available by the statute.

The instant case is similar to the situation addressed in Kidder v. H & B Marine, Inc., supra, 932 F.2d at 355–57. The Kidder court held an employer 100% liable for an employee's medical costs that would have been covered under an applicable group health plan. The employer was held liable because, inter alia, it failed in its duty to properly notify the plan administrator of the employee's termination. The Court of Appeals stated,

"As a result of section 1166(a)(2), ... the employer ..., obviously had a responsibility to notify the plan administrator of the occurrence of the qualifying event. Thus [the employer] bore some notification burden in addition to its responsibility to provide continuation coverage." 932 F.2d at 355.[7]

See Van Hoove v. Mid–America Building Maintenance, Inc., 841 F.Supp. 1523, 1535

---

lated either provision; thus, no penalties shall be assessed.

5. Bethenergy contends Plaintiff knew, by virtue of the Summary Plan Description ("SPD") supplied to him at the commencement of his participation, that his continuation coverage would lapse upon his termination. Bethenergy implies Plaintiff can thus not argue he was unaware payment for the continuation coverage was necessary or that he did not know to save for the time when payments would become due. The Court notes simply that an employer may not relieve itself of the responsibility to notify the plan administrator of an employee's qualifying event by supplying the employee with the SPD. See, e.g., Phillips v. Riverside, Inc., supra, 796 F.Supp. at 409 ("The fact that [the employee] was given notice of his COBRA rights at the commencement of his insurance plan through the SPD booklet, which is required under section 1166(a)(1), in no way relieves the plan administrator of the second round of notice obligations under section 1166(a)(4)(A) after a qualifying event. The law requires two notices, not one.").

6. This fact is clearly acknowledged by Bethenergy in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment, where it states,

"plaintiff is correct that had he known of his COBRA options in advance, he could have paid for his January coverage on January 1, 1991, and for monthly coverage thereafter on the first day of such month. Under this scenario, Mr. Ward would have paid for all of his coverage by June 1, 1991, as opposed to July 20, 1991, as a result of Bethenergy's late notice." Id. at 3.

7. The Court of Appeals went on to state:

"in addition to the duty of notification imposed at the commencement of the plan, COBRA imposes on some parties a continuing duty to keep beneficiaries informed of their rights under the plan and to inform them whenever information comes to light indicating that their COBRA rights have been materially affected. See 29 U.S.C.A. § 1166(a)(4)." 932 F.2d at 356.

(D.Kan.1993) (where employer failed to notify plan administrator of employee's termination within thirty days of the termination, "[t]his constitutes a violation of COBRA. 29 U.S.C. § 1166(a)(2)."); *see also Local 217 v. MHM, Inc.,* 976 F.2d 805, 809 (2nd Cir.1992) ("COBRA provides that, if an employer maintains a group health plan, the plan must provide continuation coverage for employees who would lose coverage because of a qualifying event. The employer or sponsor's only further obligation under COBRA is to notify the administrator of the qualifying event[.]"); *Hubicki v. Amtrak Nat'l Passenger R.R. Co.,* 808 F.Supp. 192, 196 (E.D.N.Y.1992) ("The notification requirements of COBRA are clear. In the event of a covered employee's termination, an employer must notify the administrator of the group health plan within thirty days, [Title 29 U.S.C.] § 1166(a)(2)[.]"); *Phillips v. Riverside, Inc., supra,* 796 F.Supp. at 406; *Bruno v. United Steelworkers of America, supra,* 784 F.Supp at 1318 ("the employer must notify the plan administrator of a 'qualifying event,' such as termination, within thirty days of the event.").

It is clear Bethenergy has, by its own admission, violated the notice provisions of COBRA. Title 29 U.S.C. § 1166(a)(2).

**B.**

■ The quantum of damages when an employer neglects its notification responsibilities was stated recently in *Van Hoove v. Mid–America Building Maintenance, Inc., supra,* 841 F.Supp. at 1536:

"The purpose of the civil enforcement provisions of COBRA is, above all, to put plaintiffs in the same position they would have been in but for the violation. *Phillips v. Riverside, Inc.,* 796 F.Supp. 403, 411 (E.D.Ark.1992); *Gaskell v. Harvard Co–Op Soc.,* 762 F.Supp. 1539, 1543 (D.Mass. 1991), *vacated on other grounds,* 3 F.3d 495 (1st Cir.1993). It is therefore appropriate to compensate plaintiff for her losses. However, plaintiff's medical bills alone are not the proper measure of damages. The court must reduce the amount by any deductibles or co-payments, as well as the premium that [plaintiff] would have had to pay had she elected continuation coverage. *Phillips,* 796 F.Supp. at 411."

Because of its admitted violation of the COBRA notice provision, and its detrimental impact upon the Plaintiff, the Court **GRANTS** summary judgment for the plaintiff against Bethenergy and **DENIES** Bethenergy's motion for summary judgment. However, the Court has not been presented with the total amount of medical bills claimed by the Plaintiff. The Court therefore **ORDERS** the parties to submit a proposed order within thirty (30) days of the entry of this order reflecting the amount of damages owed to the Plaintiff. The medical bills must be reduced by the amount of any co-payments, deductibles or premiums.[8] *Van Hoove, supra.*

**C.**

■ Plaintiff also complains his credit rating has been impaired due to delinquent medical bills that would have been paid timely had the continuation coverage been provided. The court notes it has the power to grant equitable relief to redress COBRA violations. Title 29 U.S.C. § 1132(a)(3)(B)(i) ("A civil action may be brought ... by a participant ... to obtain ... appropriate equitable relief ... to redress such violations [of any provision of this subchapter or the terms of the plan]"). In exercise of its equitable jurisdiction to make the Plaintiff whole, the Court further **ORDERS** Bethenergy to contact the Plan Administrator and the Plaintiff's health care creditors and to inform them that Plaintiff's delinquency on his medical bills from January 1, 1991 through June 30, 1991 occurred as a result of a legitimate contractual dispute between the parties, and as such, the creditors of Plaintiff's medical bills should be instructed to correct their reports to credit bureaus to note Plaintiff's delinquencies were not his fault. Bethenergy shall submit a memorandum to the Court within thirty (30) days describing how it has complied with this order.

---

8. The parties should work out the number of monthly premiums by which the damages should be reduced, bearing in mind the denial of Plaintiff's right to pay premiums in monthly installments pursuant to 29 U.S.C. § 1162(3)(B). *See* Note 3, *supra.*

### D.

Plaintiff also seeks attorney fees. Title 29 U.S.C. § 1132(g) states: "In any action under this subchapter ... by a participant ... the court in its discretion may allow reasonable attorney's fee and costs of the action to either party." In *Reinking v. Philadelphia American Life Insurance Company*, 910 F.2d 1210, 1217–19 (4th Cir.1990), *overruled on other grounds, Quesinberry v. Life Ins. Co. of N. Amer.*, 987 F.2d 1017, 1029–30 (4th Cir.1993), the Court of Appeals enunciated a five-factor approach by which a trial court must exercise its discretion in deciding a motion for attorney fees under COBRA:

> "1. degree of opposing parties' culpability or bad faith;
>
> "2. ability of opposing parties to satisfy an award of attorneys' fees;
>
> "3. whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances;
>
> "4. whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and
>
> "5. the relative merits of the parties' positions."

910 F.2d at 1217–18, *citing Iron Workers Local No. 272 v. Bowen,* 624 F.2d 1255, 1266 (5th Cir.1980). *See Quesinberry, supra.*

The Court of Appeals went on to state, "[i]n exercising its discretion under the statute, the court may use the five factors as a guide, but it must also bear in mind the remedial purposes of ERISA to protect employee rights and to secure effective access to federal courts." 910 F.2d at 1218. However, an award of attorney fees and costs is not automatically made to the prevailing party; a mandatory presumption of an attorney fee award would violate the clear terms of the statute giving *discretion* to the trial court whether to grant such an award. *Custer v. Pan Amer. Life Ins. Co.,* 12 F.3d 410, 422 (4th Cir.1993) ("a party who prevails does not, by prevailing alone, establish a presumption of entitlement to an award of fees."); *Quesinberry v. Life Ins. Co. of N. Amer., supra.*

Balancing all of the factors set forth in *Reinking, supra,* and *Quesinberry, supra,* the Court concludes an award of attorney fees and costs is appropriate in this case. Although Bethenergy has not acted with malice or bad faith, it is difficult to understand its legal position in light of its admission of the COBRA notice violation. Moreover, Bethenergy undoubtedly has the resources to satisfy an award of attorney fees and costs, and this Court believes such an award will deter other persons acting under similar circumstances.[9] The relative merits of the parties' positions weighs heavily in favor of an award of attorney fees and costs as Bethenergy admits to the COBRA violation. Thus, in its discretion, this Court concludes the weight of the foregoing considerations, when combined with "the remedial purposes of ERISA to protect employee rights and to secure effective access to federal courts," *Reinking, supra,* 910 F.2d at 1218, sufficiently tips the scales in favor of an award of attorney fees and costs in this case. The Court therefore **ORDERS** Bethenergy to pay Plaintiff's reasonable attorney fees.

### IV.

Based upon the foregoing, the Court **ORDERS** the following: (1) Plaintiff's motion for joinder is **DENIED**; (2) Bethenergy's motion for summary judgment is **DENIED**; (3) Plaintiff's motion for summary judgment against Bethenergy is **GRANTED**; (4) Plaintiff's motion for summary judgment against Pen–Wel is **DENIED**; (5) Plaintiff is **GRANTED** his reasonable attorney fees. The Plaintiff has thirty (30) days from the entry of this order to submit to the Court an affidavit setting out his reasonable attorney fees associated with this action.

---

9. Bethenergy has offered no reason for its CO-  BRA violation.