JAMES A. MIDDLETON, JR. AND JULIE T. MIDDLETON v. THE RUSSELL GROUP, LTD.
(FORMERLY ADS, INC.), BROOKE LICENSING, AND LIFE INSURANCE COMPANY
OF GEORGIA

No. COA96-355

(Filed 15 April.1997)

1. **Insurance § 351 (NCI4th)— former employee—group
   health insurance—absence of COBRA notice of right to
   continue—tolling of election and premium payment**

   Where plaintiff former employee has never been given the
   statutorily required notice of his right after the termination of his
   employment to continue his health insurance coverage under
   COBRA, plaintiff's election period and corresponding duty to pay
   the premium remain tolled until such notice is provided.
   Therefore, plaintiff is entitled to health insurance coverage under
   the employer's plan even though he has never made an election
   or paid a premium for continuation of coverage.

   **Am Jur 2d, Employment Relationship § 207; Insurance
   § 1863.**

   **Construction and application of ERISA provisions gov-
   erning continuation coverage under group health plans (29
   USCS §§ 1161 et seq.). 126 ALR Fed. 97.**

1

MIDDLETON v. RUSSELL GROUP, LTD.

[126 N.C. App. 1 (1997)]

2. **Insurance § 351 (NCI4th)— former employee—group health insurance—employer as insurer's agent—employer's failure to give COBRA notice—liability of insurer**

An employer which performed administrative functions with respect to group health insurance provided for its employees was the agent of the health insurer so that the insurer was liable for the employer's mistake in determining that a former employee and his family were not entitled to health insurance continuation coverage under COBRA and the employer's failure to give the former employee notice of his COBRA rights. Therefore, the insurer was liable for medical expenses incurred by the former employee's wife after the termination of his employment less any co-payment, deductibles, or premiums that must be deducted.

**Am Jur 2d, Insurance § 1851.**

**Imputation of servant's or agent's contributory negligence to master or principal. 53 ALR3d 664.**

3. **Retirement § 22 (NCI4th)— ERISA action—award of attorney fees**

The trial court did not err by awarding attorney fees to plaintiffs, a former employee and his wife, in an ERISA action against the employer, the employee benefit plan administrator and the group health insurer where failure by the employer and the plan administrator to provide notice to plaintiff former employee of his right to continue health insurance under COBRA after his termination prevented plaintiffs from paying medical bills and forced them to defend a hospital's lawsuit, and although the insurer was not responsible for providing COBRA notice, the insurer asserted several defenses in addition to those asserted by the other defendants and forced plaintiffs to spend time and money to rebut those contentions.

**Am Jur 2d, Insurance § 1772.**

**Remedies and measure of damages for wrongful cancellation of life, health, and accident insurance. 34 ALR3d 245.**

**Insured's right to recover attorneys' fees incurred in declaratory judgement action to determine existence of coverage under liability policy. 87 ALR3d 429.**

**MIDDLETON v. RUSSELL GROUP, LTD.**

[126 N.C. App. 1 (1997)]

### 4. Costs § 37 (NCI4th); Retirement § 22 (NCI4th)— ERISA action—enhancement of attorney fees

In an ERISA action by a former employee and his wife in which the employer's group health insurer was found liable for medical expenses incurred by the wife after the employee was terminated because the employer and its benefits plan administrator failed to give the employee notice of his right to continued health insurance coverage under COBRA, the trial court erred by enhancing an award of attorney fees to plaintiffs against all defendants by 1.5 where the court's order stated that the award was enhanced (1) to reward plaintiffs' attorneys for a job well-done, (2) to reflect the complexity of the issues, and (3) to compensate plaintiffs for the hardship they suffered as a result of the delayed payment of their medical expenses. The trial court's finding that the quality of legal representation provided by plaintiffs' counsel was "exemplary and efficient" was insufficient to justify a fee enhancement for exceptional performance; the complexity of the issues was reflected in counsel's billable hours and was not an appropriate basis for fee enhancement; and enhancement of counsel fees was not a proper method to penalize defendants for breach of their fiduciary duty in failing to pay plaintiffs' medical bills.

**Am Jur 2d, Attorneys at Law § 244.**

**What constitutes bad faith on part of insurer rendering it libel for statutory penalty imposed for bad faith in failure to pay, or delay in paying, insured's claim. 33 ALR4th 579.**

### 5. Damages § 3 (NCI4th)— cross-claim—litigation expenses as damages

Defendant health insurer's cross-claim against defendant employer and defendant employee benefits administrator is remanded for a proper determination of damages where the trial court correctly found that defendant insurer suffered no loss in the payment of plaintiffs' medical expenses from negligence by the employer and the plan administrator in failing to give plaintiff former employee notice of his right to continued health insurance coverage under COBRA after his termination, but the trial court erred by failing to find the employer and plan administrator liable to the insurer for additional expenses incurred in defending plain-

MIDDLETON v. RUSSELL GROUP, LTD.

[126 N.C. App. 1 (1997)]

tiffs' lawsuit to recover the medical expenses and in paying costs taxed against it by the trial court.

**Am Jur 2d, Insurance §§ 1849, 1851.**

**Liability of insurance agent for exposure of insurer to liability because of issuance of policy beyond authority or contrary to instructions. 35 ALR3d 907.**

6. **Insurance § 351 (NCI4th)— right to continued health insurance—failure to give COBRA notice—payment of premiums—instructions**

In a former employee's action to recover medical expenses incurred after the termination of his employment on the ground that the employer and its benefits plan administrator failed 'to give him notice of his right to continue group health insurance coverage under COBRA, the trial court properly instructed the jury on defendant's defense of plaintiff's failure to pay premiums as well as on plaintiff's alternative contentions that the employer had agreed to pay all of his health insurance premiums as a part of his employment agreement or that the employer had agreed to deduct his portion of the premiums from his pay.

**Am Jur 2d, Employment Relationship §§ 207, 210.**

**Construction and application of ERISA provisions governing continuation coverage under group health plans (29 USCS §§ 1161 et seq.). 126 ALR Fed. 97.**

7. **Evidence and Witnesses § 82 (NCI4th)— background evidence—relevancy**

Plaintiff former employee's testimony that his son called him and told him that a wall had fallen on his wife and that his wife was in intensive care for an extended period and near death for several weeks was relevant to provide a backdrop and complete picture of what occurred in this action to recover the wife's medical expenses based on failure of the employer and its benefits plan administrator to give plaintiff COBRA notice of his right to continue group health insurance coverage after the termination of his employment.

**Am Jur 2d, Evidence §§ 308, 328.**

**Propriety under Federal Rules of Evidence 403, permitting exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time. 48 ALR Fed. 390.**

8. **Evidence and Witnesses § 2908 (NCI4th)— redirect testimony—door opened by cross-examination**

   When counsel for defendants asked a hospital employee on cross-examination whether she had made a notation that plaintiffs "were very wealthy," defendant opened the door to testimony by the male plaintiff that plaintiffs had lost everything because they had given everything they had to the hospital on a note against their home and property for the female plaintiff's medical expenses.

   **Am Jur 2d, Evidence § 491.**

   **Prejudicial effect of admission, in personal injury action, of evidence as to financial or domestic circumstances of plaintiff. 59 ALR2d 371.**

9. **Retirement § 22 (NCI4th)— ERISA action—health insurance benefits—allocation of risks among defendants—no joint and several liability**

   In a former employee's ERISA action to recover health insurance benefits, the trial court had no basis to impose joint and several liability on the employer, plan administrator, and insurer for the full amount of unpaid medical claims where these defendants had contractually allocated the insurance risk for such claims among themselves.

   **Am Jur 2d, Contribution §§ 10, 62.**

10. **Retirement § 22 (NCI4th)— ERISA action—health insurance benefits—employee-hospital settlement—no reduction of judgment**

   The trial court did not err by failing to reduce the judgment in an ERISA action to recover health insurance benefits to an amount less than plaintiffs' actual medical expenses because of a settlement agreement between plaintiffs and the hospital where the hospital agreed to make certain adjustments only if the net proceeds paid to plaintiffs in this lawsuit are insufficient to satisfy the entire amount owed, and plaintiffs thus will not receive payment in excess of the amount necessary to pay their medical expenses.

   **Am Jur 2d, Insurance §§ 1393, 1402, 1810.**

   **Insured's settlement of third person's claim without suit, following liability insurer's denial of liability on**

ground that claim is not within policy coverage, as affecting insurer's liability. 67 ALR2d 1086.

11. **Judgments § 655 (NCI4th); Retirement § 22 (NCI4th)— ERISA action—prejudgment interest—state rate**

The trial court did not err by applying the 8% state prejudgment interest rate rather than the 3.45% federal rate on plaintiffs' ERISA claim for unpaid health insurance benefits.

**Am Jur 2d, Interest and Usury §§ 59, 75.**

**Liability of insurer for prejudgment interest in excess of policy limits for covered loss. 23 ALR5th 75.**

12. **Retirement § 22 (NCI4th)— health insurance coverage— breach of contract—constructive fraud—claims preempted by ERISA**

Claims by a former employee and his wife against the employer and its benefits plan administrator for breach of contract and constructive fraud were preempted by ERISA where those claims were premised on allegations of wrongfully denied health insurance coverage.

**Am Jur 2d, Pensions and Retirement Funds §§ 115-119.**

**When is state or local law pre-empted by Employee Retirement Income Security Act of 1974, as amended (ERISA) (29 USCS §§ 1001 et seq.)—Supreme Court cases. 121 L. Ed. 2d 783.**

13. **Retirement § 22 (NCI4th)— unfair and deceptive practice—claim against health insurer—not exception to ERISA preemption**

Plaintiff former employee's claim for unfair and deceptive practices by defendant health insurer based upon improper claim processing or administration was not saved from ERISA preemption by exceptions for state law claims which regulate insurance.

**Am Jur 2d, Pensions and Retirement Funds §§ 115-119.**

**When is state or local law pre-empted by Employee Retirement Income Security Act of 1974, as amended (ERISA) (29 USCS §§ 1001 et seq.)—Supreme Court cases. 121 L. Ed. 2d 783.**

**14. Negligence § 9 (NCI4th)— negligent representation— damages**

Recovery on a claim by a former employee and his wife against the employer and its plan administrator for negligent mis- representation of health insurance coverage was limited to amounts due under the insurance policy and did not include puni- tive damages and damages for emotional distress.

**Am Jur 2d, Damages § 951; Insurance § 141.**

**What constitutes bad faith on part of insurer rendering it libel for statutory penalty imposed for bad faith in fail- ure to pay, or delay in paying, insured's claim. 33 ALR4th 579.**

Appeal by parties from judgment entered 1 September 1995 by Judge Catherine C. Eagles in Guilford County Superior Court. Heard in the Court of Appeals 4 December 1996.

*Smith, Follin & James, L.L.P., by J. David James, for plaintiffs.*

*Floyd Allen and Jacobs, L.L.P., by Jack W. Floyd and Constance Floyd Jacobs, for defendants The Russell Group, Ltd. and Brooke Licensing.*

*Frazier, Frazier & Mahler, L.L.P., by Harold C. Mahler, Cynthia R. Jarrell, and Torin L. Fury, for defendant Life Insurance Company of Georgia.*

WYNN, Judge.

On 27 April 1992, Charlie Russell, owner and president of defend- ant ADS, Inc. (subsequently changed to "The Russell Group" and hereinafter referred to as "ADS/Russell") hired plaintiff James Allen Middleton, Jr. as an advertising consultant. As part of the employment agreement, ADS/Russell agreed to enroll Middleton and his family in its employee health insurance plan.

Under a contract with defendant Brooke Licensing (a holding company also owned by Charlie Russell), defendant Life of Georgia ("LOG") provided the health insurance coverage for ADS/Russell employees through a "self-accounting" plan of insurance. The plan required Brooke Licensing to act as the policyholder, plan sponsor,

**MIDDLETON v. RUSSELL GROUP, LTD.**

[126 N.C. App. 1 (1997)]

and plan administrator.[1] The plan also required the employee to submit medical bills to ADS/Russell which in turn kept the records, determined which employees were eligible for coverage, and forwarded claim forms to LOG for payment. LOG, however, kept no records of covered employees, and acquired knowledge of named insured only upon the forwarding of a claim form from ADS/Russell.

The record on appeal indicates that ADS/Russell generally paid sixty-five percent of the premium cost for insurance coverage and the employee paid the remaining thirty-five percent via payroll deduction. (Nothing in the plan itself governed whether the employer, the employee, or a combination of both paid the premium.) Each month, ADS/Russell forwarded to Brooke Licensing a lump sum for the premiums and a list of covered employees. Brooke Licensing, in turn, forwarded to LOG one lump sum check without the list of covered employees.

In July 1992, Middleton signed a form requesting enrollment for family health insurance coverage and authorizing ADS/Russell to deduct his share of the premiums from his paycheck. No deductions were ever made from Middleton's paycheck for any portion of the health insurance premium, nor did ADS/Russell inform Middleton that he would need to pay for his share of the health insurance premium. Moreover, until Middleton's employment termination in August 1992, ADS/Russell listed him as a covered employee and paid the total family coverage insurance premium for him to Brooke Licensing. Brooke Licensing, in turn, included Middleton in the premium calculations paid to LOG.

Approximately one month after ADS/Russell terminated Middleton's employment, a brick wall fell on his wife, Julie, seriously injuring her. After admitting her for medical treatment, Moses Cone Hospital called LOG to verify health insurance coverage. LOG referred the hospital to ADS/Russell which through Vicki Hill, the ADS/Russell employee in charge of health insurance, informed the hospital that Mrs. Middleton was covered.

Shortly thereafter, Ms. Hill discovered from the company's records that Middleton's share of the premium had never been deducted from his paycheck, nor had he paid his premium share

---

1. LOG also offered businesses a more expensive option in which it was solely responsible for administering insurance. Under this "standard accounting" plan, employees would send claims forms directly to LOG which was responsible for processing them and making determinations of eligibility.

**MIDDLETON v. RUSSELL GROUP, LTD.**

[126 N.C. App. 1 (1997)]

directly to the company. She also learned that the company terminated Middleton's employment on 31 August 1992. To address these concerns, Ms. Hill prepared a letter dated 25 September 1992 notifying Middleton of his right to continuation coverage under the medical insurance plan and attached the appropriate form for him to elect coverage under the federal act entitled the Consolidated Omnibus Reconciliation Act ("COBRA")[2]. The letter also informed him that he had not paid his share of the premiums and requested full payment of his past premium share. However, the letter ·was never mailed to Middleton because Charlie Russell made a determination that if Middleton had not paid his share of the premiums, he never had health insurance coverage and therefore ADS/Russell was not obligated to provide him any COBRA continuation coverage.

As a result of her extended hospitalization, Mrs. Middleton amassed $356,454.61 in medical bills. (The parties stipulate that the LOG policy would have paid $351,960.28 of this total.) On receiving a letter from the Middletons' attorney demanding coverage for the medical bills, LOG called Vicki Hill at ADS/Russell who responded that neither Middleton nor his dependents were covered because he failed to pay his share of the premiums. Accordingly, LOG refused to pay Mrs. Middleton's medical bills.

On 19 October 1993, plaintiffs sued ADS/Russell, Brooke Licensing, and LOG asserting claims for: (1) breach of contract; (2)

---

2. ADS/Russell provided a health plan for its employees under the provisions of COBRA, codified at 29 U.S.C. §§ 1161-67. The applicable portions of COBRA have been summarized as follows:

COBRA provides that employers must allow former employees the opportunity to continue health care coverage under the employer's plan if a qualifying event occurs. 29 U.S.C. § 1161. Such coverage usually is provided by the employer at the employee's expense, not to exceed 102% of the employer's cost. 29 U.S.C. § 1162(3). The plan administrator must give appropriate notice of COBRA rights on two separate occasions. Under 29 U.S.C. § 1166(a)(1), covered employees and their spouses must be notified of their rights under COBRA at the time of commencement of coverage under the plan. The second round of notice-giving is triggered by a qualifying event. 29 U.S.C. § 1166(a)(4). Termination of employment is a qualifying event. 29 U.S.C. § 1163(2). In the event of termination of a covered employee, an employer must notify the administrator of the group health plan within thirty days of the termination. 29 U.S.C. § 1166(a)(1). The plan administrator, in turn, must notify the discharged employee and other qualified beneficiaries within fourteen days of their COBRA rights and allow them at least sixty days to decide whether or not to elect continuation of their group health plan coverage. 29 U.S.C. §§ 1165(1), 1166(a)(4) and (c), 1167(3)(B). Discharged employees generally may elect such coverage for up to eighteen months following their termination. 29 U.S.C. § 1162(2)(A)(i)

*Phillips v. Riverside, Inc.*, 796 F.Supp. 403, 405-06 (E.D.Ark. 1992).

failure to provide benefits under ERISA; (3) injunctive relief to provide COBRA benefits; (4) constructive fraud; (5) negligent misrepresentation; and (6) unfair and deceptive trade practices. Defendants' subsequent attempt to remove this action to federal court was thwarted by the federal district court's remand to our state courts. Thereafter, ADS/Russell and Brooke Licensing answered denying the plaintiffs' allegations, and alternatively cross-claimed against LOG for benefits under the plan. Likewise, LOG denied the allegations of the complaint and cross-claim, and asserted a cross-claim against ADS/Russell and Brooke Licensing for breach of contract.

Before trial, the court granted defendants' motions for summary judgment on all state law claims except negligent misrepresentation. At the close of all evidence, the trial court directed a verdict for LOG on the claim of negligent misrepresentation. As a result, the trial court submitted two issues to the jury which it answered as follows:

1. Was the Middleton family covered, on September 22, 1992, by a policy of health insurance issued by [LOG] to Brooke Licensing covering ADS/Russell employees?

Answer: No

2. Was the Middleton family eligible for COBRA coverage?

Answer: Yes

(The trial court also submitted a third question regarding the claim of negligent misrepresentation against ADS/Russell and Brooke Licensing, but instructed the jury not to answer it if they answered "yes" to either of the first two questions.)

In accordance with the jury's verdict, the trial court entered an order and judgment holding that ADS/Russell and Brooke Licensing failed to comply with their legal obligation to inform Middleton of his right to continued health insurance coverage under COBRA. The Court also held that although LOG had no obligation to give Middleton COBRA notice, and was not a co-fiduciary with regard to giving notice, the insurer was still responsible for paying Mrs. Middleton's medical bills under COBRA. From this judgment, all parties appeal.

---

## LOG'S APPEAL

On appeal, LOG contends that the trial court erred by: (I) holding LOG liable for the Middletons' medical expenses where Brooke

**MIDDLETON v. RUSSELL GROUP, LTD.**

[126 N.C. App. 1 (1997)]

Licensing, the plan administrator, failed to give plaintiffs notice of their rights under COBRA, and plaintiffs neither made an election nor paid a premium for COBRA coverage; (II) awarding attorneys' fees to plaintiffs; (III) enhancing plaintiffs' attorneys' fees by a factor of 1.5; and (IV) failing to grant judgment for LOG on its cross-claim against the other defendants. We affirm the trial court's decision to hold LOG liable for plaintiffs' medical bills and award attorneys' fees, but reverse its decision to enhance the attorneys' fees by a factor of 1.5, and remand LOG's cross-claim for further consideration.

I.

LOG first argues that the trial court erred by finding it liable for plaintiffs' medical bills where Brooke Licensing, the plan administrator, failed to give Middleton notice of his rights under COBRA, and Middleton never made an election nor paid a premium for COBRA coverage. We disagree.

**[1]** It is well-settled that the period of time that a qualified beneficiary has to elect continuation coverage is tolled until he or she has received notice of the right to purchase said coverage:

> [T]hat the election period must begin on or before the day when the qualified beneficiary would lose coverage and must not end before the date that is 60 days after the <u>later of</u> (1) the day when qualified beneficiary would lose coverage or (2) <u>the day when the qualified beneficiary is sent notice of the right to elect coverage. Thus if a plan administrator fails to advise the qualified beneficiary of his or her rights, the qualified beneficiary may have the right to elect coverage until such time as notice is received.</u>

*ERISA: A Comprehensive Guide* 362 (Martin Wald and David E. Kenty eds., 1991) (emphasis added). *See also Communication Workers of America, Dist. One v. NYNEX Corp.*, 898 F.2d 887, 888-89 (2d Cir. 1990); *Ward v. Bethenergy Mines, Inc.*, 851 F.Supp. 235, 239 (S.D.W.Va. 1994); *Hubicki v. Amtrak Nat'l Passenger R.R. Co.*, 808 F.Supp. 192, 196 (E.D.N.Y. 1992). For example, in *Ward v. Bethenergy Mines,* the plaintiff should have been notified of his COBRA conversion rights as early as February 1990; however, he was not notified of such until April 1991. The district court stated that the plaintiff "then timely elected to receive such coverage," thereby implying that the election period was tolled for over a year until he received proper notice. 851 F.Supp. at 239.

**MIDDLETON v. RUSSELL GROUP, LTD.**

[126 N.C. App. 1 (1997)]

In the instant case, the insurance policy issued by LOG recognizes that the election period is tolled until a qualified beneficiary receives notice of his right to COBRA coverage:

Insurance may be continued temporarily as follows: . . .

2. If an employee's insurance terminates due to:

(i) termination of his employment; . . . he has the right to request temporary continuance of Comprehensive Medical Expense Benefits for up to 18 months for himself and his covered dependents. To continue coverage, <u>we must be advised within 60 days after the employee receives notice of his right to continue coverage and must be paid the full premium within 45 days of the employee's election to continue coverage.</u> (emphasis added).

It is undisputed that plaintiffs have never received notice of their right to continue coverage, and therefore neither the 60 days to elect coverage nor the 45 days thereafter to pay a premium has begun to run. Since the record indicates that Middleton has never received the statutorily required notice, as in *Ward*, the plaintiffs' election period and corresponding duty to pay the premiums have been, and apparently remain, tolled until such notice is provided. However, requiring defendants to now provide the statutorily required notice would be pointless in light of plaintiffs' present action seeking payment under COBRA. Accordingly, we affirm the trial court's award of coverage; however, we must remand for a determination of the amount of any co-payment, deductibles or premiums that must be deducted from plaintiffs' recovery. *Ward v. Bethenergy Mines*, 851 F.Supp. at 240; *Van Hoove v. Mid-America Bldg. Maintenance, Inc.*, 841 F.Supp. 1523, 1536 (D.Kan. 1993).

[2] Even assuming for the sake of argument that we accept LOG's contention that plaintiffs were not entitled to recover benefits under the plan for failure to elect continuation coverage or pay premiums, we would still affirm the trial court's decision to hold LOG liable for plaintiffs' unpaid medical expenses. LOG contends that it should not be held responsible for ADS/Russell and Brooke Licensing's mistake since it had neither the ability nor the authority to determine whether the Middletons were entitled to coverage. ADS/Russell and Brooke Licensing object to LOG's characterization of itself as a "mere claims

**MIDDLETON v. RUSSELL GROUP, LTD.**

[126 N.C. App. 1 (1997)]

processor."[3] We need not address this issue, however, because regardless of whether LOG had the power to review the decision to terminate plaintiffs' coverage, we find that the other defendants' mistake is imputed to LOG under an agency theory.

LOG correctly states the well-settled rule in this jurisdiction that "the employer in a group insurance policy is not <u>ordinarily</u> the agent of the insurer." *Bank v. Insurance Co.*, 303 N.C. 203, 215, 278 S.E.2d 507, 515 (1981) (emphasis added); *Rivers v. Insurance Co.*, 245 N.C. 461, 467, 96 S.E.2d 431, 436 (1957). In *Bank*, our Supreme Court relied upon *Boseman v. Insurance Co.*, 301 U.S. 196, 81 L. Ed. 1036 (1937), where the U.S. Supreme Court stated:

> Employers regard group insurance not only as protection at low cost for their employees but also as advantageous to themselves in that it makes for loyalty, lessens turn-over and the like. When procuring the policy, obtaining applications of employees, taking payroll deduction orders, reporting changes in the insured group, paying premiums and generally doing whatever may serve to obtain and keep the insurance in force, *employers act not as agents of the insurer but for their employees or for themselves.*

*Id.* at 204-05, 81 L. Ed. at 1041 (emphasis added).

Nonetheless, the use of the word "ordinarily" in the general rule indicates a recognition that there may be occasions in which an agency relationship does exist between an employer and insurer. Indeed, a number of other jurisdictions have held that when an employer takes an action to procure group insurance coverage for its employees, the employer acts as the agent of its employees; however, once the policy is issued, when the employer performs duties incident to the *administration* of the coverage which are commonly performed by the insurer, the employer is acting as the agent of the

---

3 Indeed, while the record shows that in the normal course of events, ADS/Russell was responsible for determining which employees were eligible for coverage, the following passage from the insurance agreement entered into by LOG and Brooke Licensing appears to indicate that LOG retained for itself the power to make coverage decisions:

> Furnishing and Verification of Information. You [Brooke] will furnish Us [LOG] all information We need to administer the coverage and to determine premiums under this policy. You must also provide Us proof We may reasonably require with respect to this policy or any Insured under this policy. We have the right to review Your payroll and personnel records which may have a bearing on the insurance under this policy.

*insurer. See Miles v. Great Southern Life Ins. Co.*, 398 S.E.2d 772 (Ga. Ct. App. 1990); *Clements v. Continental Casualty Ins. Co.*, 730 F.Supp. 1120 (N.D.Ga. 1989); *Paulson v. Western Life Ins. Co.*, 636 P.2d 935 (Or. Sup. Ct. 1981); *Norby v. Bankers Life Co.*, 231 N.W.2d 665 (Minn. Sup. Ct. 1975); *Elfstrom v. New York Life Insurance Co.*, 432 P.2d 731 (Ca. Sup. Ct. 1967); *Clauson v. Prudential Ins. Co. of America*, 195 F.Supp. 72 (D.C.Mass. 1961), *aff'd*, 296 F.2d 76 (1st Cir. 1961); *Kaiser v. Prudential Ins. Co.*, 76 N.W.2d 311 (Wis. Sup. Ct. 1956).

We hold that the facts of the instant case warrant a divergence from the conventional rule. An employer who performs administrative functions, as in the instant case, is deemed to be the agent of the insurer. The rationale for our decision is best summarized by the following passage from *Elfstrom v. New York Life Ins. Co.*, 432 P.2d at 738:

> The most persuasive rationale for adopting the view that the employer acts as the agent of the insurer . . . is that the employee has no knowledge or control over the employer's actions in handling the policy or its administration. An agency relationship is based upon consent by one person that another shall act in his behalf and be subject to his control . . . It is clear from the evidence regarding procedural techniques here that the insurer-employer relationship meets this agency test with regard to the administration of the policy, whereas that between the employer and its employees fails to reflect true agency. The insurer directs the performance of the employer's administrative acts, and if these duties are not undertaken properly the insurer is in a position to exercise more constricted control over the employer's conduct.

(citations omitted).

If the instant case had involved a "standard accounting" plan, LOG would have been responsible for administering the insurance coverage. However, LOG voluntarily put itself in a position where it had no knowledge of which specific employees were covered, it established the procedures by which all medical claims were handled, provided the forms to be used, and trained ADS/Russell personnel. By choosing to structure its relationship with Brooke Licensing as a "self-accounting" plan, LOG elected to delegate the responsibility of maintaining records of insured employees and to rely upon Brooke

Licensing's determination as to whether a specific employee, such as Middleton, was covered.

Moreover, the record on appeal shows that ADS/Russell and Brooke Licensing's failure to notify the Middletons of their rights to continuation coverage was not a matter of inadvertence; instead, ADS/Russell and Brooke Licensing made a conscious decision that COBRA did not apply because Middleton had not paid his share of the premiums. Accordingly, we hold that LOG must bear the consequences of its agent's mistaken decision to terminate plaintiffs' coverage. *See Morpul Research Corp. v. Westover Hardware, Inc.*, 263 N.C. 718, 721, 140 S.E.2d 416, 418 (1965) (the principal is bound by the acts of the agent within the agent's express authority).

In sum, we affirm the trial court's decision to hold LOG liable for plaintiffs' medical bills but remand for a determination of any co-payment, deductibles or premiums that must be deducted.

## II.

[3] All defendants object to the trial court's order requiring the payment of plaintiffs' attorneys' fees by ADS/Russell and Brooke Licensing in the amount of $78,563.41 and by LOG in the amount of $19,640.85.

29 U.S.C. § 1132 provides that in any action brought under ERISA, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). Thus, the abuse of discretion standard governs review of the award of attorneys' fees. *Perroti v. Seiter*, 935 F.2d 761, 763 (6th Cir. 1991).

Factors ordinarily considered in viewing requests for attorneys' fees under 29 U.S.C. § 1132(g) include: (1) degree of opposing parties' culpability or bad faith; (2) ability of opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing party would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions. *Quesinberry v. Life Ins. Co. of North America*, 987 F.2d 1017, 1029 (4th Cir. 1993) (citation omitted).

Upon review of the record in the instant case, we conclude that the trial court did not abuse its discretion in awarding attorneys' fees

to plaintiffs. The trial court found, and we agree, that attorneys' fees were appropriate because ADS/Russell and Brooke Licensing's failure to provide COBRA notice prevented the Middletons from paying their medical bills and forced them to defend a lawsuit filed by Moses Cone Hospital. Although the parties dispute whether ADS/Russell required Middleton to pay part of the premium, the trial court noted that no one from ADS/Russell ever sent Middleton a bill, invoice, or statement, or in any other way requested payment for his share of the health insurance premium. Moreover, ADS/Russell had previously allowed other employees to pay their share of the premium several months past due. Thus, we find no abuse of discretion in the trial court's appropriation of attorneys' fees against ADS/Russell and Brooke Licensing.

The trial court also held LOG responsible for attorneys' fees even though LOG was not responsible for providing COBRA notice and did not participate in the decision to cut coverage to plaintiffs. The trial court found that LOG asserted several defenses in addition to those raised by ADS/Russell and Brooke Licensing, forcing plaintiffs to spend time and money to rebut LOG's contentions. LOG fails to show how the trial court's rationale was an abuse of discretion. Accordingly, we affirm the imposition of attorneys' fees against LOG.

### III.

[4] Again, all defendants object to the trial court's decision to enhance plaintiffs' award of attorneys' fees by a factor of 1.5. In support of their objection, they cite *City of Burlington v. Dague*, 505 U.S. 557, 120 L. Ed. 2d 449 (1992), in which the U.S. Supreme Court overruled the enhancement of attorneys' fees based on the contingency risk of a case. Defendants contend that the trial court improperly awarded a contingency enhancement.

Although plaintiffs had a contingency arrangement with their attorneys, the record shows the trial court did not enhance the fees to compensate plaintiffs' attorneys for the risk to which they subjected themselves. In the Order and Judgment, the trial court explained its rationale for the enhancement:

> In this matter . . . [t]he legal issues involved were complicated and the case was strenuously defended. The failure of [defendants] to provide COBRA notice to the plaintiffs and the resulting delay of almost three years between the date the medical bills were incurred and the date of this judgment have caused substantial

**MIDDLETON v. RUSSELL GROUP, LTD.**

[126 N.C. App. 1 (1997)]

hardship to the plaintiffs, including requiring them to defend a lawsuit filed by Moses Cone Hospital. The quality of legal representation provided by plaintiffs' counsel was exemplary and efficient. <u>For all of these reasons,</u> the Court will award attorneys' fees at an appropriate hourly rate and will also enhance the attorneys' fee award at a factor of 1.5.

(emphasis added).

Thus, the trial court articulated three reasons for enhancing the attorneys' fees: (1) to reward plaintiffs' attorneys for a job-well-done; (2) to reflect the complexity of the issues; and (3) to compensate plaintiffs for the hardship they suffered as a result of the delayed payment of their medical expenses. Although nothing in the trial court's reasoning indicates that it enhanced plaintiffs' fees based on a contingency risk, we nevertheless find that the trial court erred in several ways.

Fee enhancement for quality of representation is permissible in "rare and exceptional cases" where the attorney's work is so superior and outstanding that it far exceeds the client's expectations and normal levels of competence. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air (Delaware Valley I)*, 478 U.S. 546, 92 L. E. 2d 439 (1986). In *Delaware Valley I*, the Supreme Court counseled:

> Because considerations concerning the quality of a prevailing counsel's representation normally are reflected in the reasonable hourly rate, the overall quality of performance ordinarily should not be used to adjust the lodestar, thus removing any danger of "double counting."

*Id.* at 566, 92 L. E. 2d at 457.

A review of the case law indicates a strong presumption against exceptional performance enhancements. *See Lipsett v. Blanco*, 975 F.2d 934, 942 (1st Cir. 1992). "[E]xceptional performance is generally a function of the competence and experience that is reflected in the reasonable hourly rate." *Hall v. Ochs*, 817 F.2d 920, 929 (1st Cir. 1987). To support such an enhancement, fee applicants must "offer specific evidence to show that the quality of service rendered was superior" and the courts are obligated to elucidate with particularity the reasons why the lodestar figure (reasonable hours multiplied by reasonable rate) is not a reasonable compensatory fee. *Blum v. Stenson*, 465 U.S. 886, 899, 79 L. Ed. 2d 891, 902 (1984); *McKenzie v. Kennickell*,

684 F.Supp. 1097, 1105 (D.D.C. 1988), *aff'd*, 875 F.2d 330 (D.C. Cir. 1989).

In the instant case, the trial court's order contains none of the facts which justify a fee enhancement based on exceptional performance. The trial court merely states in a conclusive fashion that "[t]he quality of legal representation provided by plaintiffs' counsel was exemplary and efficient." We hold that this finding is insufficient under *Blum* to justify a fee enhancement for exceptional performance.

The trial court also enhanced plaintiffs' attorneys' fees based on the complexity of the issues. However, in *Blum*, the Court held that the "novelty and complexity of the issues presumably [are] fully reflected in the number of billable hours recorded by counsel and thus do not warrant an upward adjustment in a fee . . . Neither complexity nor novelty of the issues, therefore, is an appropriate factor in determining whether to increase the basic fee award." *Id.* at 898-99, 79 L. Ed. 2d at 901-02 (emphasis added). Accordingly, the trial court in the instant case erred when it enhanced the fee to reflect the difficulty of the matter.

Lastly, the trial court enhanced plaintiffs' attorneys' fees because of the hardship they suffered as a result of the delayed payment of their medical expenses. Citing *Missouri v. Jenkins*, 491 U.S. 274, 105 L. Ed. 2d 229 (1989), plaintiffs argue that enhancement is permissible to reflect a delay in payment.

In *Jenkins*, the court observed:

When plaintiffs' entitlement to attorney's fees depends on success, their lawyers are not paid until a favorable decision finally eventuates, which may be years later . . . Meanwhile, their expenses of doing business continue and must be met. In setting fees for prevailing counsel, the courts have regularly recognized the delay factor, either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value.

*Id.* at 282, 105 L. Ed. 2d at 239 (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air (Delaware Valley II)*, 483 U.S. 711, 716, 97 L. Ed. 2d 585, 592 (1987)).

Thus, *Jenkins* recognizes a delay in payment to plaintiffs' counsel as an appropriate basis for fee enhancement. However, in the

**MIDDLETON v. RUSSELL GROUP, LTD.**

[126 N.C. App. 1 (1997)]

instant case, the trial court enhanced the attorneys' fees for defendants' delay in providing insurance money so that plaintiffs could pay their medical bills, rather than for the delay in payment to plaintiffs' counsel. We agree with defendants' contention that the trial court's motive in doing so was to penalize them for their breach of fiduciary duty. This clearly was not a permissible justification. *See Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144, 87 L. Ed. 2d 96, 105 (1985) (punitive damages not allowed under § 1132(a)(2), authorizing recovery for breach of fiduciary duty). Accordingly, we hold that the trial court erred by enhancing plaintiffs' attorneys' fees on the grounds that defendants forced plaintiffs to wait three years to pay their medical bills.

Since we find that the trial court's findings are insufficient, we reverse that part of the award providing for an enhancement of plaintiffs' attorneys' fees by a multiplier of 1.5. On remand, we do not constrain the trial court from revisiting this issue and determining whether factors exist for an enhancement of attorneys' fees under the guidance of *Blum* and *Jenkins*.

### IV.

**[5]** Lastly, LOG contends that the trial court erred in failing to grant judgment in its favor on its cross-claim against ADS/Russell and Brooke Licensing. The trial court found that although ADS/Russell and Brooke Licensing were negligent, this negligence did not proximately cause any damage to LOG. Since it is undisputed that LOG would have been required to pay plaintiffs' medical expenses if ADS/Russell had notified Middleton of his right to continuation coverage, we agree with the trial court's conclusion that the insurer suffered no loss in payment of the medical expense as provided in the insurance policy.

However, in reaching this conclusion, it appears that the trial court focused only on LOG's liability for Mrs. Middleton's medical expenses. LOG contends that if ADS/Russell and Brooke Licensing had not negligently determined that the Middletons were not entitled to coverage, it would have paid Mrs. Middleton's medical bills and would not have incurred the additional expenses necessary to defend the Middletons' lawsuit nor incurred the costs taxed to it by the trial court. LOG maintains that the trial court should have found ADS/Russell and Brooke Licensing liable to LOG for these particular expenses. After carefully reviewing the record, we find merit to LOG's contention.

MIDDLETON v. RUSSELL GROUP, LTD.

[126 N.C. App. 1 (1997)]

The agreement executed by Brooke Licensing and LOG provides:

The Policyholder shall reimburse Life of Georgia for any Judgment or settlement (including attorneys' fees) if the Court rendering the Judgment or the agency making the award was caused by the negligence, fraud or criminal conduct of the Policyholder, its officers, directors, employees or agents.

(emphasis added).

The record indicates that LOG specifically requested in its cross-claim that the cost of this action be taxed against ADS/Russell and Brooke Licensing. Furthermore, the record shows that LOG's counsel raised this issue with the trial court:

The Russell Group breached its duty, and that breach was the proximate cause of this entire litigation. But for the breach of duty, none of us would be here. We—our client, Life of Georgia, would not be paying us for seven days to try this case. They wouldn't have been paying for the last two years of litigation costs.

Since it does not appear that the trial court addressed all the damages that LOG sought, we reverse the trial court's judgment against LOG on its cross-claim, and remand the case to the trial court for a determination of any further damages LOG may be entitled to recover from ADS/Russell and Brooke Licensing.

## ADS/RUSSELL AND BROOKE LICENSING'S APPEAL

In their appeal to this court, ADS/Russell and Brooke Licensing contend that the trial court erred by: (I) submitting inadequate and confusing issues and instructions on the alleged agreement between ADS/Russell and Middleton for payment of premiums; (II) allowing plaintiffs to testify about the extent of the injuries suffered by Mrs. Middleton; (III) allowing Middleton to testify about his family's financial difficulties; (IV) apportioning plaintiffs' medical expenses jointly and severally among the defendants; (V) finding that Brooke Licensing's buy-out agreement with LOG did not include the Middleton dispute; (VI) failing to reduce the judgment to recognize plaintiffs' settlement with Moses Cone Hospital; (VII) applying the 8% state interest rate instead of the federal rate of 3.45% on plaintiffs' ERISA claim for unpaid benefits; and (VIII) concluding that LOG was not a fiduciary in regards to giving plaintiffs notice of their rights to COBRA coverage.

We decide these issues, *in seriatum*, by holding that the trial court: (1) properly instructed the jury; (2) properly allowed testimony regarding Mrs. Middleton's injuries and plaintiffs' financial distress; (3) erred by imposing joint and several liability among the defendants; (4) properly found that Brooke Licensing's buy-out agreement with LOG did not include the Middleton dispute; (5) properly decided not to reduce the judgment; (6) properly decided to apply the 8% state interest rate; and (7) appropriately chose not to address ADS/Russell's and Brooke Licensing's arguments as to whether LOG was a co-fiduciary in regards to giving plaintiffs notice of their rights to COBRA coverage.

I.

**[6]** ADS/Russell and Brooke Licensing first contend that the trial court erred by failing to submit their defense to the jury and by misleading the jury to believe that they must choose between the two interpretations of the contract that plaintiffs offered. We disagree.

In his lawsuit, Middleton alleged that ADS/Russell had agreed to pay all of his health insurance premiums as part of the employment agreement. In the alternative, he alleged that ADS/Russell had agreed to deduct the cost of his contribution for the premiums from his pay. In response, ADS/Russell and Brooke Licensing pled Middleton's failure to pay premiums as a defense to plaintiffs' claim, i.e., the employee contribution was a condition of coverage that plaintiff failed to meet. They argued that because Middleton requested that ADS/Russell pay his company directly for his services, plaintiff was under an obligation to insure payment for his share of the premiums.

The trial court first addressed the issue of premium payments in its charge to the jury as follows:

> The Middletons must prove to you the following four things: first, that Mr. Middleton enrolled for family coverage in the plan, and all the evidence is that he did; second, that Mr. Middleton was an employee under the plan; third, that either A.D.S./Russell agreed to pay the premiums for family coverage without contribution from Mr. Middleton or that A.D.S./Russell agreed to deduct the premium costs from its monthly payments for Mr. Middleton's work;
>
>     . . . .
>
> In this case it is undisputed that Mr. Middleton never contributed to the cost of his health insurance premiums, and you must

decide whether that was because A.D.S./Russell had agreed to pay those premiums without contribution of Mr. Middleton, because A.D.S./Russell agreed to deduct those premiums, or because Mr. Middleton failed to make those payments when he knew that he should to have coverage.

(emphasis added.)

ADS/Russell and Brooke Licensing contend that the trial court failed to submit their defense to the jury and misled the jury to believe that they must choose between the two interpretations of the contract plaintiffs offered. However, the record indicates that the court presented both parties' position on why the premiums were never paid. Moreover, the trial court explained that the plaintiffs had the burden of proving the four elements in order to prevail on their claim. Thus, defendants' objection is without merit.

ADS/Russell and Brooke Licensing also contend that the trial court failed to indicate what the jury should do if it found that Middleton did not meet his burden of proof or if it believed that the evidence supported their contention that Middleton had agreed but failed to pay his share of the premium. We disagree.

The record shows that the trial court instructed the jury that if they were unable to find in plaintiffs' favor on any one of the four elements, including the issue of who was responsible for premium payments, they were to move on to the next issue. Thus, defendants' objection is without merit.

Finally, ADS/Russell and Brooke Licensing object to the trial court's charge to the jury contending that it presumed the existence of a valid employment contract. They argue that it prevented the jury from deciding whether the lack of mutual agreement on the terms of payment for health insurance coverage affected the enforceability of the employment contract. We disagree.

Throughout the trial, ADS/Russell and Brooke Licensing's defense rested on the contention that Middleton had agreed to pay his premiums, but failed to do so. They did not join in LOG's defense that Middleton was not an employee. Only on appeal do they argue that there was no meeting of the minds as to all provisions of the employment contract between ADS/Russell and Middleton, and that the employment contract was therefore invalid. Essentially, defendants complain that the trial court did not properly instruct the jury on what to do if it found the parties never agreed on who was responsi-

MIDDLETON v. RUSSELL GROUP, LTD.

[126 N.C. App. 1 (1997)]

ble for making Middleton's premium payments. However, the record reveals that the trial court instructed the jury that if it were unable to make this determination, it should decide in defendants' favor. Thus, we conclude that defendants' argument is without merit.

## II.

[7] ADS/Russell and Brooke Licensing next object to Middleton's testimony that his son called him and told him that a wall had fallen on his wife; that Mrs. Middleton was in intensive care for an extended period of time; and that she was on the verge of death for several weeks. They also object to Mrs. Middleton's testimony that she lost a lung. Defendants contend that the plaintiffs only offered this testimony to evoke sympathy from the jury and thus, it should have been excluded as irrelevant. We disagree.

Evidence is relevant if it provides a complete story or shows the chain of circumstances leading to the claims in dispute. *Santora, McKay & Ranieri v. Franklin*, 79 N.C. App. 585, 589, 339 S.E.2d 799, 801 (1986). "Evidence which is essentially background in nature is universally offered and admitted as an aid to understanding." *Id.*

In the instant case, the Middletons' testimony provided a backdrop and complete picture of what occurred in this case, and was therefore relevant. We do not believe that the trial court acted improperly by allowing plaintiffs to inform the jury as to the particulars of an accident that caused over a quarter of a million dollars worth of medical expenses. Therefore, we overrule the defendants' objection.

## III.

[8] The defendants also object to Middleton's testimony on direct examination that he considered himself a wealthy man prior to the date of his wife's injury. Over objection, he then testified that he no longer considered himself wealthy because: "We don't have anything. Everything we have we have given to the hospital on a note against our home and our property, everything. We have lost our company. We have lost everything we have." Defendants contend that this testimony should not have been allowed at the trial and that it was unnecessarily prejudicial, entitling them to a new trial. We disagree.

Generally, this type of testimony is not allowed. However, when a party first raises an issue, it opens the door to questions in response to that issue and cannot later object to testimony regarding the sub-

ject raised. *See State v. Norman,* 331 N.C. 738, 742, 417 S.E.2d 233, 235 (1992).

In the instant case, Liz Greeson, an employee of Moses Cone Hospital, testified that ADS/Russell informed her that they would not provide coverage for Mrs. Middleton's treatment. On cross-examination, counsel for ADS/Russell and Brooke Licensing specifically asked Ms. Greeson whether she had made a notation that the "Middletons were very wealthy." In so doing, ADS/Russell and Brooke Licensing opened the door to Middleton's testimony regarding his wealth. Accordingly, we hold that the trial court properly overruled defendants' objection to that testimony.

## IV.

**[9]** ADS/Russell and Brooke Licensing also contend that the trial court erred in holding all defendants jointly and severally liable in the amount of $351,960.28. The plan called for Brooke Licensing to reimburse LOG $35,000 per insured prior to 31 October 1992 and $50,000 per insured from 1 November 1992 until 31 October 1993. As ADS/Russell and Brooke Licensing point out, the trial court recognized in the judgment that the claim should be paid according to the terms of the contract: "Life of Georgia should pay $266,090.28 and ADS/Russell and Brooke Licensing should pay $85,000." They contend that the court erred by ignoring this conclusion of law and ordering joint and several liability among all three defendants for the full amount. We agree.

An ERISA action to recover benefits due is one of contract, not of tort. As such, extracontractual damages are not available in a suit to recover unpaid benefits. *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. at 144, 87 L. Ed. 2d at 105.

In the instant case, the defendants had contractually allocated the insurance risk among themselves. Thus, the trial court had no basis for imposing joint and several liability for the full amount of the unpaid claims. Accordingly, we reverse the trial court's decision to impose joint and several liability and remand the issue with instructions to enter a judgment for damages reflecting the allocation contractually agreed upon by the parties.

## V.

ADS/Russell and Brooke Licensing next contend that the trial court erred in finding that its buy-out agreement with LOG did not include the Middleton dispute. We disagree.

Brooke Licensing terminated the LOG insurance plan as of 1 November 1994 and paid LOG $231,000 to buy out the plan. Through the buy-out agreement, Brooke Licensing "bought out all of [it's] responsibility on any claims for the past four years." ADS/Russell and Brooke Licensing argue that the buy-out agreement released Brooke Licensing from continuing responsibility for claims and that Mrs. Middleton's medical bills constituted a "claim," albeit a disputed one. Therefore, they maintain, LOG is responsible for the total amount awarded to plaintiffs and is not entitled to a $85,000 reimbursement from Brooke Licensing.

However, the trial court found, and we agree, that the Middleton dispute was not a claim because ADS/Russell told LOG that plaintiffs were never insured under the plan. Therefore, the trial court did not err in finding that the buy-out agreement was not meant to include Mrs. Middleton's bills.

## VI.

**[10]** ADS/Russell and Brooke Licensing next contend that under the agreement between plaintiffs and Moses Cone Hospital, a payment of approximately $292,000 would extinguish the hospital debt and therefore, the trial court erred by failing to reduce the judgment to reflect this lower figure. We disagree.

At the time of the trial, plaintiffs owed Moses Cone Hospital $341,894.25. Contrary to defendants' contention, the settlement agreement between Moses Cone Hospital and plaintiffs does not allow plaintiffs to simply pay the hospital $292,000, thereby extinguishing the debt. Rather, the agreement requires that the Middletons pay the hospital the entire proceeds they receive from this lawsuit after litigation expenses and attorneys' fees are deducted. While the hospital agreed to make certain adjustments if the net proceeds paid to the plaintiffs are insufficient to satisfy the entire principal and interest owed, those adjustments would be made only after all of the net proceeds are paid to the hospital. Thus, plaintiffs will not receive payment in excess of the amount necessary to pay medical expenses as defendants contend. Accordingly, we hold that the trial court did not err by failing to reduce the judgment to an amount less than the actual medical expenses.

## VII.

**[11]** ADS/Russell and Brooke Licensing next contend that the trial court erred by applying the 8% state interest rate instead of the fed-

**MIDDLETON v. RUSSELL GROUP, LTD.**

[126 N.C. App. 1 (1997)]

eral rate of 3.45% on plaintiffs' ERISA claim for unpaid benefits. We disagree.

In *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 983-84 (5th Cir. 1991), the 5th Circuit held that while there is an applicable federal statute governing postjudgment interest, *see* 28 U.S.C. § 1961(a), there is no equivalent statute governing prejudgment interest, and therefore, the appropriate source of guidance should be state law. Because it was the statutory rate of interest applicable in claims brought under North Carolina, the trial judge in the instant case imposed 8% prejudgment interest on ADS/Russell and Brooke Licensing from 1 March 1993 to 1 September 1995 adding $70,392 to the defendants' liability. Moreover, we note that the court also settled on 8% because it matches the interest rate applicable to the balance plaintiffs owed to Moses Cone Hospital and thus reflects the true harm caused by the defendants.

Since the trial court appropriately looked to state law to determine that 8% was the proper rate for prejudgment interest, we affirm its decision.

## VIII.

Plaintiffs join ADS/Russell and Brooke Licensing in objecting to the trial court's determination that LOG was not a co-fiduciary in regards to giving COBRA notice. They contend LOG should have reviewed ADS/Russell's decision to deny coverage and could have issued the COBRA notification itself. Since we affirm the trial court's decision to hold LOG liable for plaintiffs' medical bills, we need not address this argument.

## MIDDLETONS' APPEAL

In their appeal to this court the Middletons contend that the trial court erred by: (I) dismissing all of plaintiffs' state law claims, except for negligent misrepresentation; (II) ruling that their claim for negligent misrepresentation against ADS/Russell and Brooke Licensing was limited to amounts due under the insurance policy; and (III) granting LOG's motion for directed verdict on the negligent misrepresentation claim at the close of the evidence. We affirm the trial court's decision to dismiss plaintiffs' state law claims and to limit plaintiffs' recovery to the amounts due under the insurance policy. We do not address the merits of plaintiffs' final argument.

MIDDLETON v. RUSSELL GROUP, LTD.

[126 N.C. App. 1 (1997)]

I.

Plaintiffs first contend the trial court erred in dismissing their state law claims because the claims did not make reference to or have a connection with an ERISA plan. They argue that the claims are general legal theories that function irrespective of the existence of an ERISA plan. We disagree.

The trial court granted defendants' motion for summary judgment on all of plaintiffs' state law claims, except for negligent misrepresentation against ADS/Russell and Brooke Licensing, on the grounds that they were preempted by ERISA.

ERISA provides that its provisions "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). A claim relates to an ERISA plan when it has a connection with or makes reference to an ERISA plan. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97, 77 L. Ed. 2d 490, 501 (1983). If the state claim does not concern the substance of the plan or its regulation and the plan is only tangentially or incidentally involved, the claim does not "relate" to the plan and there is no preemption. *Welsh v. Northern Telecom, Inc.*, 85 N.C. App. 281, 289, 354 S.E.2d 746, 751, *disc. review denied*, 320 N.C. 638, 360 S.E.2d 107 (1987).

It is important to note that the preemption provision of ERISA is to be broadly construed. *See Shaw v. Delta Air Lines*, 463 U.S. at 97-100, 77 L. Ed. 2d at 501-02; *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139, 112 L. Ed. 2d 474, 484 (1990); *FMC Corp. v. Holliday*, 498 U.S. 52, 58, 112 L. Ed. 2d 356, 364 (1990) ("The preemption clause is conspicuous for its breadth."). In *Ingersoll-Rand*, the U.S. Supreme Court noted that Congress meant for there to be an expansive interpretation of the words "relate to":

> Under this "broad common-sense meaning," a state law may "relate to" a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect.

*Id.* at 139, 112 L. Ed. 2d at 484 (citations omitted).

A review of the case law reveals that courts have consistently preempted state law claims which involve redress for mishandling benefit claims or other maladministration of employee benefit plans. *See e.g., Powell v. Chesapeake & Potomac Telephone Co. of Virginia*, 780

F.2d 419, 422 (4th Cir. 1985) (claims for intentional infliction of emotional distress, breach of implied covenant of good faith and fair dealing, breach of contract, and violation of Virginia's Unfair Trade Practices Act preempted by ERISA), *cert. denied*, 476 U.S. 1170, 90 L. Ed. 2d 980 (1986); *Salomon v. Transamerica Occidental Life Ins. Co.*, 801 F.2d 659, 600 (4th Cir. 1986) ("ERISA clearly preempts [plaintiff's] common law claims of breach of contract and estoppel.").

**[12]** In the subject case, plaintiffs alleged breached of contract because "ADS/Russell Group did not provide the promised health insurance coverage." They alleged constructive fraud because "[d]efendants took advantage of their position of trust by providing [Middleton] with inaccurate information about his health insurance coverage and by failing to provide health insurance coverage for plaintiff." We find that all of plaintiffs' claims are premised on allegations of wrongfully denied insurance coverage, and are therefore preempted by ERISA. Accordingly, we affirm the trial court's finding that ERISA preempted these claims.

Plaintiffs next contend that even if their state law claims "related to" an employee benefit plan, they should not have been preempted because ERISA has an exception for state law claims which regulate insurance. 29 U.S.C. § 1144(b)(2)(A) (known as the "savings clause"). Plaintiffs maintain that their common law claims apply to insurance companies and therefore regulate insurance. Were we to accept plaintiffs' logic, then every state cause of action would be able to survive ERISA preemption. Thus, we reject plaintiffs' argument.

**[13]** Plaintiffs next allege that their state statutory claim for relief, i.e., unfair and deceptive trade practices, is saved from preemption because it regulates insurance. We disagree.

The essence of plaintiffs' unfair and deceptive trade practice claim is that LOG "misrepresented that there was no medical insurance coverage for [them] under LOG's policy." Plaintiffs contend that LOG's misrepresentations violated N.C. Gen. Stat. § 58-63-15 (1) (1991), whose purpose it is to regulate the business of insurance. However, the law is well-settled that a state cause of action for improper claim processing or administration filed against an insurer does "not bear upon the 'business of insurance' within contemplation of ERISA's insurance savings clause and thus is not saved from preemption by ERISA." *Powell v. Chesapeake & Potomac Telephone Co.*, 780 F.2d at 423-24. *See also Custer v. Pan American Life Ins. Co.*, 12 F.3d 410, 419-20 (4th Cir. 1993); *DeBruyne v. Equitable Life Assur.*

*Soc'y of the United States*, 920 F.2d 457, 467-70 (7th Cir. 1990) (misrepresentation claim under New York insurance law is not within the scope of the savings clause); *Ramirez v. Inter-Continental Hotels*, 890 F.2d 760, 763-64 (5th Cir. 1989) (same for Texas law prohibiting unfair competition or practices in the insurance business). Therefore, we affirm the trial court's decision to dismiss plaintiffs' state law claims.

[14] Plaintiffs next find fault with the trial court's ruling that their claim for negligent misrepresentation against ADS/Russell and Brooke Licensing was limited to amounts due under the insurance policy. Plaintiffs contend that they were also entitled to punitive damages and damages for emotional distress. We disagree.

Both parties agree that although North Carolina recognizes a cause of action for negligent misrepresentation, the courts have not specifically addressed the extent of damages available therein. However, in *Raritan River Steel Co. .v. Cherry, Bekaert & Holland*, 322 N.C. 200, 367 S.E.2d 609 (1988), our Supreme Court expressly adopted the standards for liability in negligent misrepresentation actions set forth in the Restatement (Second) of Torts § 552 (1977). *Id.* at 203, 367 S.E.2d at 611. Also, North Carolina courts mirror the Restatement in recognizing contributory negligence as a bar to recovery for negligent misrepresentation. *See e.g., Stanford v. Owens*, 76 N.C. App. 284, 287, 332 S.E.2d 730, 732, *disc. review denied*, 314 N.C. 670, 336 S.E.2d 402 (1985).

Since North Carolina has expressly adopted the Restatement's definition of negligent misrepresentation and its position regarding contributory negligence, it reasonably follows that our courts should apply the Restatement's measure of damages for negligent misrepresentation claims:

> 1. The damages recoverable for a negligent misrepresentation are those necessary to compensate the plaintiff for the pecuniary loss to him of which the misrepresentation is a legal cause, including (a) the difference between the value for what he has received in the transaction and its purchase price . . . and (b) pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation.

Restatement (Second) of Torts § 552B (1977). *See also Karas v. American Family Ins. Co. Inc.*, 33 F.3d 995, 999 (8th Cir. 1994) (mental anguish damages not element of misrepresentation claim).

Therefore, we conclude the trial court correctly limited plaintiffs' damages to the lost insurance coverage.

## III.

Finally, plaintiffs object to the directed verdict granted in LOG's favor on the negligent misrepresentation claim at the close of the evidence. Since we have already determined that plaintiffs are entitled to plan benefits, we need not address the merits of their state law claim against LOG. *See Smith v. Cohen Benefit Group, Inc.*, 851 F.Supp. 210, 214 (M.D.N.C. 1993) ("Should Plaintiffs prevail on any of their state law claims against CBG, they will not be entitled to Plan benefits but will be limited to a recovery of damages against CBG itself.").

## CONCLUSION

For the reasons set forth above, we affirm in part and reverse in part, and remand with instructions to the trial court to: (1) reduce defendants' liability for plaintiffs' medical bills by the amount of any co-payment, deductibles or premiums; (2) determine whether the evidence supports the making of findings to support an enhancement of attorneys' fees based on exceptional performance; (3) determine whether LOG may be entitled to any further recovery from ADS/Russell and Brooke Licensing on its cross-claim; and (4) enter a judgment for damages which reflects the allocation contractually agreed upon by the defendants.

Affirmed in part, Reversed and Remanded in part.

Judges GREENE and MARTIN, John C. concur.