Judith **CHENOWETH**, Plaintiff,

v.

**WAL–MART STORES, INC.**, Defendant.

No. C–2–00–353.

United States District Court, S.D. Ohio, Eastern Division.

Aug. 17, 2001.

John Spenceley Marshall, Joshua Morrow, John S. Marshall Law Offices-2, Columbus, OH, for plaintiff.

Roy A. Hulme, Reminger & Reminger, Cleveland, OH, for defendant.

### *OPINION & ORDER*

KINNEARY, District Judge.

This matter is before the Court on cross motions for summary judgment. (Doc. # 11; Doc. # 26.) For the reasons discussed below, the Court **GRANTS** Plain-

tiff's motion for partial summary judgment and **DENIES** Defendant's motion for summary judgment.

## I. INTRODUCTION

### A. Background

Plaintiff, Judith Chenoweth ("Chenoweth"), brings this lawsuit against Defendant, Wal–Mart Stores, Inc. ("Wal–Mart") after she was terminated from her job. Her amended complaint sets forth five causes of action. (Doc. # 10.) The first and second causes of action allege violations of the Family and Medical Leave Act of 1993 ("FMLA") based upon Chenoweth's termination from Wal–Mart for missing work to care for her ill husband. The third cause of action alleges a violation of The Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") based upon Wal–Mart's failure to inform Chenoweth that she could elect continued health care benefits following her termination. The fourth cause of action alleges a violation of Ohio public policy for wrongful discharge. The parties have voluntarily dismissed the fifth cause of action.

Presently before the Court is Chenoweth's motion for partial summary judgment based upon her COBRA claim as well as Wal–Mart's cross motion for summary judgment on the COBRA claim and motion for summary judgment on the FMLA claims and Ohio public policy tort claim.

### B. FACTS [1]

Judith Chenoweth worked as a cashier for Wal–Mart. (Doc. # 31 at 2.) On May 5, 1999, Chenoweth's husband had a medical emergency and she left work to be with him. (*Id.*) Based upon his condition, Chenoweth called off of work every day for the rest of May. (*Id.* at 3.) On May 31, 1999, a doctor diagnosed Mr. Chenoweth as hav-

ing suffered a severe stroke and relayed that he would need full time care. (*Id.* at 3.) That day Judith Chenoweth contacted Wal–Mart and spoke to the store manager, Stuart Orem. Chenoweth told Orem of her husband's diagnosis and said that she would need to take a leave of absence in order to care for him. (*Id.*) Orem told Chenoweth to pick up a leave of absence packet at the store. (*Id.*) According to Chenoweth, she told Orem that she could not pick one up until June 2, 1999 because of her husband's doctor appointments. (*Id.*)

On June 2, 1999, Chenoweth went to Wal–Mart to pick up the leave of absence packet. (*Id.*) The packet contains a medical certification to be filled out by a physician explaining the reason an employee needs leave from work. Chenoweth immediately took the medical certification form to her husband's doctor for him to complete. (*Id.*) Five days later on June 7th, Chenoweth called the doctor to inquire about the certification. (*Id.* at 4.) He informed her that he could not complete it and so she retrieved the certification from him. (*Id.*) Upon explaining the situation to her husband's home health aid, Sandy Cooper, Cooper offered to give the certification to Mr. Chenoweth's occupational therapist to complete. (*Id.*)

On June 8, 1999, Chenoweth received a phone message that Wal–Mart had called three or four days earlier. (*Id.*) According to Chenoweth, she called Wal–Mart back that day and spoke to Orem. (*Id.* at 4.) During that phone conversation, Chenoweth contends that Orem terminated her because she had not returned the medical certification within 15 days, as required by store policy. In addition, she testified that Orem told her she had broken the law and could be prosecuted for not turning in the

---

1. The parties view the facts of this case differently. Where their factual accounts differ, the Court accepts as true the non-moving party's account of the events.

certification. (*Id.*) Chenoweth asserts that she explained to Orem that she was still waiting for the doctor to complete the medical certification. (*Id.* at 5.) According to Chenoweth, she was initially told by Wal–Mart to return the packet as soon as possible and was unaware of any time limitation imposed for completing the leave of absence packet. (*Id.*)

The following day on June 9, 1999, Mr. Chenoweth called Mike Fetrow, the District Manager for Wal–Mart, to inquire about his wife's termination. (*Id.* at 6.) Fetrow told Mr. Chenoweth to call him back on June 17, 1999 because he would be out of the office until then. Judith Chenoweth was not able to reach Fetrow until June 18, 1999. (*Id.*) When she did, she explained the circumstances of her termination. During their phone conversation, Fetrow told her that she could have her job back and that he would call Orem and tell him. (*Id.* at 6–7.) Chenoweth then informed Fetrow that she had the completed medical certification and that she could bring it to Wal–Mart the next day, on June 19, 1999. (*Id.*) He told her that would be fine and so she took the leave of absence packet to Wal–Mart on June 19, 1999 and gave it to the Assistant Manager, Ruth Thompson. (*Id.* at 7.) According to Chenoweth, after that day, she did not hear from Wal–Mart again and did not think she was eligible for reinstatement or re-hire. (*Id.*)

With respect to Chenoweth's COBRA claim, she contends that she did not receive notice of her right to elect medical insurance coverage under COBRA until February 11, 2000, approximately eight months after her termination. (*Id.* at 8.) Wal–Mart does not dispute that it failed to notify her of her COBRA rights until that date. (Doc. # 31, Ex. A at ¶ 9.) According to Wal–Mart, its failure to notify Chenoweth was unintentional and was most likely due to an error in its computer system.

(Doc. # 26 at 6–7.) Wal–Mart's computer system automatically sends COBRA notices to employees who are terminated and who were receiving insurance coverage. Wal–Mart believes that the system failed to send Chenoweth the COBRA package because notice of her termination from Wal–Mart and notice of the cancellation of her insurance for nonpayment of the May premium were both entered into the system during the same time period. (*Id.*) Wal–Mart theorizes that "when the system identified that plaintiff's [insurance] coverage had been terminated, it also found plaintiff was not employed on the date of the termination coverage and did not send the COBRA package." (*Id.* at 7.)

## II. ANALYSIS

### A. Standard of Review

Under Federal Rule of Civil Procedure 56(c), a court may grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Essentially, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir.1989) (quoting *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505). However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. That is, the Court must believe the evidence of the non-moving party and draw all justifiable inferences in its favor. *See id.* It is the moving party who

has the burden of establishing that there is no genuine issue of material fact. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The question the Court must answer is "whether reasonable jurors could find by a preponderance of the evidence that the [non-movant party] is entitled to a verdict...." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The Supreme Court has held that the standard for summary judgment "mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)...." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). According to that standard, "the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Id.* This is true where, for instance, the dispute turns only on a legal question and the moving party must prevail as a matter of law even if the court were to resolve all factual disputes in favor of the non-moving party. *See Ross v. Franzen,* 777 F.2d 1216, 1222 (7th Cir.1985). It is with these standards in mind that the instant motions must be decided.

**B. Family and Medical Leave Act**

■ The FMLA permits eligible employees to take reasonable leave from work in order to care for a child, spouse, or parent who has a serious health condition. 29 U.S.C. § 2601(b)(2), (3). "Reasonable leave" under the statute equals 12 workweeks of leave during any 12 month period. 29 U.S.C. § 2612(a)(1)(C). When an employee seeks leave to care for a seriously ill family member, the employer may require the employee to submit a certification completed by a health care provider, which explains the family member's medical condition and the need for the employee to care for him or her. 29 U.S.C. § 2613. However, the employer (1) must provide written notice to the employee that it requires such a certification and (2) must advise the employee of the consequences of a failure to provide certification. 29 C.F.R. § 825.305 (2000). Moreover, the employer must provide the employee with at least 15 days to submit the certification. 29 C.F.R. § 825.305 (2000). Failure of the employer to provide such notice and opportunity constitutes "interfering with, restraining, or denying the exercise of rights provided by the Act." 29 C.F.R. § 825.220 (2000). If an employer violates an employee's rights under the FMLA, the employer is liable for compensatory damages for lost or denied wages, salary, employment benefits or other compensation, interest on the compensatory damages and liquidated damages or "double damages" equal to the compensatory damages plus the interest. 29 U.S.C. § 2617(1)(a).

In the case at hand, Wal–Mart seeks summary judgment of Chenoweth's causes of action under the FMLA alleging that Wal–Mart interfered with or denied her exercise of rights under the FMLA by not providing her adequate time to return the medical certification and by terminating her. Wal–Mart argues that it did not terminate her in violation of the FMLA. Rather, Wal–Mart contends that, because she did not return the medical certification within the time required under store policy, her absences were not excused.

Wal–Mart's leave of absence policy states that "[i]n emergency situations where you have no advance notice of the need for leave ... you must complete and submit the 'Request for Leave Form,' with proper documentation, within 15 days from the first scheduled workday missed." (Doc. # 31, Ex. D at page 6.) In its brief, Wal–Mart argues that, "[u]nder plaintiff's version (that she picked up the leave pack-

et on June 2nd and returned it on June 19th) ... it is undisputed that plaintiff did not provide proper medical certification as required." (Doc. # 26 at 11.) However, that argument completely ignores the fact that Chenoweth testified that she was terminated over the phone on June 8th, only six days after picking up the certification. Thus, considering the facts in the light most favorable to Chenoweth, she was not provided 15 days to return the certification. Based upon her deposition testimony, the Court finds that there is a genuine issue of material fact as to whether Chenoweth was given ample time under the FMLA to return the medical certification. *See Schober v. SMC Pneumatics, Inc.*, No. IP99–1285–C–T/G, 2000 WL 1231557, at * 10 (Aug. 21, 2000) ("When the record is viewed in the light most favorable to Ms. Schober, as it must be at summary judgment, August 5th was the first date on which SMC requested her to provide medical certification. Because she was terminated only 14 calendar days thereafter, a jury could find that SMC did not allow her 15 calendar days within which to provide the certification.")

■ Moreover, the FMLA regulations provide that:

When the need for leave is not foreseeable ... an employee must provide certification (or recertification) within the time frame requested by the employer (which must allow at least 15 days after the employer's request) *or as soon as reasonably possible under the particular facts and circumstances.*

29 C.F.R. § 825.311(b) (2000) (emphasis in original); *see also* 29 C.F.R. § 825.305(b) (2000)(employee must provide certification to employer within time frame requested unless not practicable under the circumstances despite employee's diligent, good faith efforts). Chenoweth testified during her deposition that after obtaining Wal–Mart's leave of absence packet on June 2,

1999, she immediately took the medical certification to her husband's physician to complete. (Doc. # 31 at 3.) She further testified that on June 7, 1999 she called the physician to check on the status of the certification and learned then that he could not complete it. (*Id.* at 4.) After discussing the situation with her husband's home health aide, Chenoweth gave the certification to her husband's occupational therapist to complete. However, she was terminated before it was returned to her. (*Id.*) Based upon her testimony, the Court finds that a reasonable jury could certainly conclude that Chenoweth acted diligently to provide the medical certification "as soon as reasonably possible under [her] particular facts and circumstances." 29 C.F.R. § 825.311(b) (2000).

■ In addition, an employer is obligated to advise the employee of the consequences of the failure to provide adequate certification. 29 C.F.R. § 825.305(d) (2000). Although Wal–Mart's leave of absence packet states that an employee has 15 days to return the medical certification, it does not warn the employee that a failure to do so will result in termination of employment. (Doc. # 31 at Ex. D.) Furthermore, Chenoweth claims that Wal–Mart only told her to return the certification as soon as possible. (*Id.* at 5.) Thus, the Court finds that a jury could reasonably conclude that Wal–Mart interfered with her FMLA rights by failing to warn her that she could be terminated for not turning in the certification.

■ As an alternative argument, Wal–Mart contends that it is entitled to summary judgment because Chenoweth cannot demonstrate that she was financially harmed as a result of being terminated. Wal–Mart asserts that,

although Plaintiff was terminated for failing to return the leave paperwork in a timely manner, she technically suf-

fered no adverse employment decision. · She was at all times eligible to return to work. Further, Plaintiff was not ready to return to work until her husband no longer needed her care. It was at this time that Plaintiff reapplied to Wal–Mart and was rehired.

(Doc. # 26 at 11–12.) Wal–Mart relies upon the deposition testimony of Mr. Chenoweth to argue that he needed to be cared for up until October 11, 2000, when his wife was rehired by Wal–Mart. (*Id.* at 5, 12.) Wal–Mart argues that, because Judith Chenoweth was entitled only to an unpaid leave of absence and because she was rehired as soon as her husband no longer needed full time care, she suffered no actual loss as a result of being terminated in June of 1999. However, in a declaration filed with the Court Judith Chenoweth states that if she had not been terminated from Wal–Mart, she would have returned to work in July or August of 1999—well before October 11, 2000. (Doc. # 31, Ex. B at 2.) As evidence, she contends that she applied for various jobs with other companies in August of 1999. (*Id.*) Thus, Chenoweth disputes Wal–Mart's argument that she suffered no financial harm as a result of being terminated. Viewing the record in the light most favorable to Chenoweth, the Court finds that a reasonable jury could conclude that she suffered financial harm as a result of being terminated.

■ Based upon the foregoing analysis, the Court DENIES Wal–Mart's motion for summary judgment on Chenoweth's FMLA causes of action. However, Wal–Mart has additionally argued that even if it is not entitled to summary judgment on her FMLA claims, "that portion of plaintiff's FMLA/termination claims which seek either liquidated or punitive damages should be dismissed as a matter of law." (Doc. # 36 at 9.)

■ The FMLA provides that an injured plaintiff may be entitled to compensatory damages such as lost wages or salary, interest and liquidated damages. 29 U.S.C. § 2617(1)(a). A court may eliminate a liquidated damages award if an employer who violated the FMLA proves that it acted in good faith and with reasonable grounds for believing it was not acting in violation of the FMLA. 29 U.S.C. § 2617(1)(a)(A)(iii). However, "[a] district court may not exercise its discretionary authority to reduce or eliminate a liquidated damages award unless the employer first sustains its burden of showing that its failure to obey the statute was in good faith." *Cavin v. Honda of Am. Mfg., Inc.,* 138 F.Supp.2d 987, 992 (S.D.Ohio 2001) (quoting *Nero v. Indus. Molding Corp.,* 167 F.3d 921, 928 (5th Cir.1999)). According to Wal–Mart, it did not act in bad faith in terminating Chenoweth and thus the Court should exercise its discretionary authority and find as a matter of law that Chenoweth is not entitled to liquidated damages. (*Id.* at 9–11.) As proof of its good faith, Wal–Mart declares that it gave Chenoweth a significant amount of time off work without penalty before she was terminated and later told her that she could have her job back. (Doc. # 36 at 10.) Yet, in taking into account the full record, the Court concludes that Wal–Mart has not met its burden of establishing good faith. At this stage of litigation, many issues of material fact exist regarding Wal–Mart's actions toward Chenoweth. Whether those actions were taken in conscious disregard of her FMLA rights is a jury question. It will be the job of the jury to judge the character and motivations of Wal–Mart's witnesses and to award damages (if any) accordingly.

**C. Ohio Public Policy Tort**

■ The amended complaint also states a cause of action against Wal–Mart for

committing the Ohio public policy tort of wrongful discharge. The Ohio public policy tort claim rests upon Wal–Mart's alleged violation of the FMLA.[2] In its brief, Wal–Mart addresses Chenoweth's FMLA claims and Ohio public policy tort claim in one argument. Because genuine issues of material fact exist with respect to whether Wal–Mart terminated Chenoweth in violation of the FMLA, genuine issues of material fact exist regarding whether Wal–Mart wrongfully discharged Chenoweth for violating the FMLA. Accordingly, the Court **DENIES** Wal–Mart's motion for summary judgment on Chenoweth's Ohio public policy tort claim. The Court also **DENIES** Wal–Mart's request that this Court exclude punitive damages as a matter of law. (Doc. # 36 at 9–11.) The Court finds that genuine issues of material fact exist regarding whether Wal–Mart acted with conscious disregard for Chenoweth's rights. Again, whether punitive damages are warranted in this case is a question for the jury.

### D. COBRA Notice Requirements

■ The Consolidated Omnibus Budget Reconciliation Act, popularly known as COBRA, provides that when a "qualifying event" occurs, such as termination, an employer must notify the employee of her opportunity to continue health care coverage under the employer-based group health insurance plan. 29 U.S.C. § 1161 *et seq.* The statute sets forth deadlines whereby the employer must notify the employee of her right to elect COBRA benefits within a particular number of days after the qualifying event. 29 U.S.C. § 1166. Here, Wal–Mart admits that it violated the statute by failing to timely notify Chenoweth of her COBRA rights. Accordingly, Chenoweth moves for partial summary judgment based upon the COBRA violation and seeks to recover her medical expenses, attorney's fees, as well as a statutory *per diem* penalty provided under 29 U.S.C. § 1132.

In contrast, Wal–Mart cross moves for summary judgment arguing that Chenoweth was not harmed by Wal–Mart's failure to notify her of her COBRA rights. According to Wal–Mart, reasonable minds can only conclude that Chenoweth was not prejudiced by late notification of her COBRA rights because she could not have afforded COBRA coverage. In support of that argument, Wal–Mart relies upon Chenoweth's deposition testimony. She testified as follows:

Q. As of June of 1999, you didn't have $58–and–some–odd cents every two weeks, did you?

A. No.

---

**2.** Federal courts throughout the United States and even those within this district differ as to whether a plaintiff may bring both a claim under the FMLA and a state law claim for wrongful discharge in violation of the FMLA. In *Arthur v. Armco, Inc.,* 122 F.Supp.2d 876, 880 (S.D.Ohio 2000), Judge Sargus for the Southern District of Ohio determined that the FMLA does not provide plaintiffs with complete relief and thus, plaintiffs may bring an FMLA claim and a tort claim for violation of Ohio public policy. *See also Bellido–Sullivan v. American International Group, Inc.,* 123 F.Supp.2d 161, 165–66 (S.D.N.Y.2000) (finding that Congress intended the FMLA to serve "as a complement to state law" because

§§ 2651(a) and (b) of the FMLA state that the Act does not curtail the rights established by any state or local law). In contrast, in *Cavin v. Honda of Am. Mfg., Inc.,* 138 F.Supp.2d 987, 998 (S.D.Ohio 2001), Judge Holschuh for the Southern District of Ohio determined that Congress intended that the FMLA provide the exclusive remedy for plaintiffs who suffered an adverse employment decision as a result of taking a family medical leave of absence from work. Because Wal–Mart did not raise this issue and because there is no binding precedent that the FMLA preempts recovery under a state law claim for wrongful discharge, the Court will not rule on this issue.

Q. Even if you'd been offered the opportunity to pay for your own health coverage in May and June of 1999, you couldn't have done that; is that true?

A. No.

Q. Is that a true statement?

A. Yes.

Q. Because you didn't have the money to pay $50 every two weeks, if that was the cost in May and June of 1999?

A. Not between May and June, no, but when I received my unemployment, I could have afforded the $58.

Q. When did you get your unemployment?

A. I applied for it in July.

(Doc. # 26, Ex. A at 86.) According to Wal–Mart, Chenoweth's testimony regarding her financial situation, coupled with the fact that she did not purchase COBRA benefits when she was finally notified of her rights, is evidence that she was not in a position to afford COBRA coverage. (Doc. # 36 at 4.) Wal–Mart argues that the purpose of 29 U.S.C. § 1132, the civil enforcement statute, is to put plaintiff in the same position she would have been in had she received timely notice. Wal–Mart contends that Chenoweth is attempting to put herself in a better position by seeking reimbursement for her medical expenses because she could not have afforded continuation of her health insurance under COBRA. (Doc. # 36 at 3.) On the other hand, Chenoweth argues that whether or not she would have purchased COBRA benefits is not relevant to Wal–Mart's liability. Still, she contends that she would have paid for COBRA insurance coverage from her unemployment benefits. Furthermore, she testified that when she was finally notified of her COBRA rights in February 2000, she did not purchase coverage because she could not afford the lump sum payment for all of the back months-June 1999 to February 2000. (Doc. # 31 at 31.)

In *Van Hoove v. Mid–America Bldg. Maintenance, Inc.*, 841 F.Supp. 1523 (D.Kan.1993), the Court declared that "[t]he purpose of the civil enforcement provisions of COBRA is, above all, to put plaintiffs in the same position they would have been in but for the violation." *Id.* at 1536 (citing *Phillips v. Riverside, Inc.*, 796 F.Supp. 403, 411 (E.D.Ark.1992)). Wal–Mart relies upon *Van Hoove* for support of its argument that Chenoweth should not be awarded her medical expenses because she was never in a position to afford COBRA benefits. (Doc. # 36 at 3.) However, this Court rejects Wal–Mart's interpretation of *Van Hoove*. Typically, courts rely on *Van Hoove* to justify reimbursing the plaintiff for medical expenses incurred as a result of not having had the opportunity to elect COBRA coverage. *See e.g. Ward v. Bethenergy Mines, Inc.*, 851 F.Supp. 235, 240 (S.D.W.V.1994); *Gaskell v. Harvard Co-op. Society*, 762 F.Supp. 1539, 1543 (D.Mass.1991). Wal–Mart does not cite to any cases in which a court has relied upon *Van Hoove* to support conducting an after-the-fact, speculative inquiry as to whether the plaintiff could have afforded COBRA coverage. As a matter of fact, that argument was rejected by the Tenth Circuit in *Smith v. Rogers Galvanizing Co.*, 128 F.3d 1380 (10th Cir.1997). The circuit court stated that "[i]t is entirely conceivable that, faced with the choice of paying the premiums or going without medical insurance altogether, plaintiffs could have borrowed money, sold assets, or found some other way to pay premiums." *Id.* at 1385. The court was clearly concerned with whether the plaintiffs were provided an opportunity to elect coverage based upon having been fully informed of their COBRA rights and refused to engage in speculation as to whether "... plaintiffs would have declined continuation coverage even if they had been fully informed of their rights...." *Id.*

■ As well, the Sixth Circuit has declared that "providing appropriate notice is a key requirement under COBRA." *McDowell v. Krawchison,* 125 F.3d 954, 957 (6th Cir.1997). Notice is necessary "to allow the qualified beneficiary to make an informed decision whether to elect coverage." *Id.* at 958. Furthermore, the Third Circuit declared in an analogous case involving ERISA's reporting and disclosure requirements that a plaintiff does not need to demonstrate harm in a civil enforcement action. *See Gillis v. Hoechst Celanese Corp. et al.,* 4 F.3d 1137, 1148 (3d Cir. 1993). The Third Circuit based its decision upon the Supreme Court's statement that " 'Congress' purpose in enacting the ERISA disclosure provisions [was to] ensur[e] that the individual participant knows exactly where he stands with respect to the plan." ' *Id.* (citing *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 118, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) (internal quotations omitted)).

In turn, this Court finds that Chenoweth does not need to demonstrate harm in bringing this civil enforcement action under COBRA. The purpose behind the COBRA notice provisions is to ensure that qualified beneficiaries like Chenoweth are fully informed of their rights and have an opportunity to elect continued coverage if they so choose. *See Mansfield v. Chicago Park Dist. Group Plan,* 997 F.Supp. 1053, 1057(N.D.Ill.1998) ("Congress not only wanted employees to have the option of continuous medical coverage; it also insisted that employees be fully informed of their options when their coverage ends.") Because Chenoweth was not fully informed of her rights and was not able to elect continued coverage under COBRA, this Court GRANTS Chenoweth's motion for partial summary judgment and DENIES Wal–Mart's motion for summary judgment on the COBRA claim.

■ The remaining issue to be determined is the amount of recovery Chenoweth should receive. The civil enforcement statute provides that "the court may in its discretion order such other relief as it deems proper." 29 U.S.C. § 1132(c)(3). Courts have interpreted "other relief" as an award of medical expenses minus deductibles and premiums. *See Jones v. Officemax, Inc.,* 38 F.Supp.2d 957, 960 (D.Utah 1999). This Court deems such an award proper in this case. Therefore, Wal–Mart is liable to Chenoweth for her medical bills, less applicable deductibles and premium fees, that she incurred from the date of the qualifying event, her termination on June 8, 1999,[3] to February 11, 2000, the date she was finally notified of her COBRA rights.

■ The civil enforcement statute also provides for an award of attorney's fees and costs. Specifically, 29 U.S.C. § 1132(g) states that "the court in its discretion may allow reasonable attorney's fee and costs of the action to either party." Recognizing that the statute provides unbridled discretion in awarding attorney's fees, the Sixth Circuit urges district courts to "confine discretion within reasonable bounds." *Armistead v. Vernitron Corp.,* 944 F.2d 1287, 1303 (6th Cir.1991). For example, the Sixth Circuit stated that,

> the courts may take into consideration any of the legitimate, relevant purposes for which fee-shifting has been permitted or proposed, including punishing bad faith litigants, providing the plaintiff with complete relief in appropriate cases, preventing the unjust enrichments of those who benefit from suc-

---

3. Wal–Mart concedes this date as the date of termination for purposes of COBRA calcula- tions. (Doc. # 36 at 7.)

cessful litigation, or removing deterrents to meritorious litigation by reducing the disparity between the resources available to the parties.

*Id.* In addition, the Sixth Circuit declared that the factors set forth in *Secretary of Dep't of Labor v. King,* 775 F.2d 666, 669 (6th Cir.1985), are also instructive. In *King,* the Sixth Circuit set forth the five factors frequently applied in deciding attorney's fees in ERISA cases. They are:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Id.* In taking into consideration the above factors, the Court determines that attorney's fees for Chenoweth are warranted in this case. First, the Court recognizes that Wal–Mart did not act in bad faith in failing to inform Chenoweth of her COBRA rights. Wal–Mart explained that the company automatically sends COBRA notices via their computer system and that the system likely failed to send a COBRA packet because Wal–Mart imputed information of Chenoweth's termination and cancellation of insurance within the same pay period. Nevertheless, Wal–Mart has forced Chenoweth to extensively argue entitlement to damages though admitting to having violated the statute. Thus, Chenoweth would not be afforded complete relief unless she is awarded attorney's fees incurred based upon the time spent informing Wal–Mart of its failure to provide COBRA notice, responding to Wal–Mart's defense that she failed to exhaust administrative remedies, and arguing her entitle-

ment to medical expenses resulting from the loss of her insurance.

Second, by awarding attorney's fees to Chenoweth this Court will help to further encourage meritorious litigation by reducing the disparity between the resources available to the parties. In this case, there is no question that Chenoweth has far fewer resources than Wal–Mart and that Wal–Mart is able to satisfy an award of attorney's fees. In addition, this Court finds that Chenoweth's position is meritorious in that plaintiffs should not have to establish after-the-fact, that they would have found a way to afford COBRA insurance had they been informed of their rights.

Third, an attorney's fee award will perhaps deter Wal–Mart from allowing the inadvertent computer errors to continue. According to Sainbury's testimony, Wal–Mart has not taken active steps to determine how to prevent the computer error in the future. (Doc. #31 at 41.) For the foregoing reasons, this Court **ORDERS** Wal–Mart to pay Chenoweth's attorney's fees related to her cause of action under COBRA.

 Lastly, the penalty provision of 29 U.S.C. § 1132(c) provides this Court with the discretion to impose a penalty on Wal–Mart up to $100 per day for failing to notify Chenoweth of her rights under CO-BRA. Wal–Mart contends that no penalty should be assessed because it did not act in bad faith in failing to send Chenoweth a COBRA package following her termination. Nevertheless, the "duties under COBRA are not onerous, while the result of noncompliance could be disastrous for the discharged employee." *Phillips,* 796 F.Supp. at 411. Thus, to impress upon Wal–Mart the importance of providing employees with notice regarding continued health care coverage, this Court **ORDERS** Wal–Mart to pay Chenoweth a statutory

penalty of $1020.00. That figure is calculated at a rate of $5 per day from July 23, 1999 (44 days from June 8, 1999, the date of termination) to February 11, 2000 (the date of notification).[4]

The Court has not been presented with the total amount of medical expenses or attorney's fees incurred by Chenoweth as a result of the COBRA violation. Therefore, the Court ORDERS the parties to submit a proposed order within thirty (30) days of the entry of this order reflecting the amount of damages owed to the Plaintiff.

### III. CONCLUSION

In conclusion, this Court **GRANTS** Chenoweth's motion for partial summary judgment based upon Wal–Mart's violation of COBRA. Chenoweth shall be awarded her medical expenses, attorney's fees and a statutory penalty associated with that cause of action. Accordingly, the Court **ORDERS** the parties to submit a proposed order reflecting those amounts. Additionally, the Court **DENIES** Wal–Mart's motion for summary judgment of the remaining causes of action under the FMLA and Ohio public policy. Genuine issues of material fact exist which must be resolved by the trier of fact. The Court will be in contact with the parties regarding the trial date and time.

**IT IS SO ORDERED.**

---

4. Wal–Mart is both the employer and plan administrator. (Doc. # 36 at 6–7.) Thus, Wal–Mart has 44 days from the date of termination to notify Chenoweth of her COBRA rights. *See Roberts v. National Health Corp.,* 963 F.Supp. 512, 515(D.S.C.1997) aff'd. at 133 F.3d 916, 1998 WL 10375.